# United States Court of Appeals

## For the First Circuit

No. 10-1776

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS ENRIQUE SANTIAGO-PÉREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Lawrence A. Vogelman, with whom Nixon, Raiche, Vogelman, Barry, Slawsky & Simoneau, P.A. was on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, was on brief, for appellee.

January 19, 2012

**HOWARD**, **Circuit Judge**. Defendant-appellant Luis Santiago-Pérez (("Santiago") was convicted of attempting to possess with an intent to distribute 500 grams or more of a controlled substance, but acquitted of conspiracy to possess with an intent to distribute the same substance. See 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), 846. Resting on Federal Rule of Evidence 403, the appellant argues that the district court erroneously admitted evidence of the amount of money that he and his companions were carrying when traveling to the British Virgin Islands. Discerning no error, we affirm.

During the afternoon of March 15, 2009, Santiago and two other men arrived at Tortola in the British Virgin Islands after traveling by ferry from St. Thomas. A customs officer asked Santiago about a "bulge" that she saw in his left pocket. He acknowledged that it was money and placed the cash on the counter when requested to do so; it totaled $5,000. The other two men also revealed the cash that they were carrying, one having $15,000 on him and the other having over $9,000. Because the $15,000 cache exceeded the legal limit for undeclared money and the defendant's companions apparently spoke little English, the customs officer asked Santiago whether he knew that one of his friends was carrying an unlawful amount. Santiago initially answered in the negative, but he then explained that the purpose of his visit to the Virgin Islands was to purchase a horse, and that he had parceled out his

purchase money to each man in an effort to circumvent the declaration requirement. Santiago was unsure of the name or location of the person from whom he intended to buy the horse. Ultimately, while retaining possession of the $15,000, the customs officer permitted the trio to continue on their way with the remaining money -- about $14,000 -- intact.

Two days later, a customs officer in Puerto Rico examined a package as it passed through an x-ray machine and deemed it suspicious. According to the labeling, the package had been shipped from St. Thomas earlier that day via express mail and the intended recipient was "Luis A. Santiago"[1] of Rio Grande, Puerto Rico. A subsequent search and investigation revealed its contents to be more than a kilogram of a cocaine mixture. Law enforcement conducted a controlled delivery on March 19 and arrested two individuals, including one of the men who had accompanied Santiago on March 15. During a second controlled delivery later that same day, Santiago was arrested after he collected the package at a post office in Puerto Rico.

A grand jury returned a two-count indictment for conspiracy and attempted possession against both Santiago and one of his March 15 traveling companions. At trial, the government's

---

[1]The parties' briefs say that the package label identified the recipient as "Luis A. Santiago," yet the testimony suggests that the label stated "Luis E. Santiago." This potential discrepancy does not alter any material aspect of this case.

-3-

array of evidence included (1) Santiago's encounter with the Tortola customs officer on March 15, (2) a surveillance video depicting Santiago mailing the cocaine-filled package on the morning of March 17 from a post office in St. Thomas, (3) testimony that a total of 14 phone calls were made on March 18 and 19 from a phone number registered in Santiago's name to the toll free phone number for tracking express mail packages, (4) Santiago's admission that he was paid $500 to mail a box of "auto parts" for a "friend" and his admission that he suspected that the box contained marijuana, and (5) testimony that during the March 2009 time frame the average cost of a bulk kilogram of cocaine ranged from $18,000 to $25,000 in Puerto Rico, and about $6,000 to $10,000[2] in the Virgin Islands.[3]  After a seven-day trial, the jury acquitted Santiago on the conspiracy count and convicted him on the attempted possession count.

On appeal, the appellant targets the evidence of the amount of money that he and his companions were carrying when entering Tortola on March 15.  He argues that its admission violated Federal Rule of Evidence 403, which provides that relevant

---

[2]Although the appellant suggests that the Virgin Islands price was $14,000 rather than being in the $6,000 to $10,000 range, the trial testimony supports the lower range.  This discrepancy, however, makes no difference in our analysis.

[3]This listing is a mere summary of a portion of the government's evidence.  Because we do not reach the defendant's argument that admission of the evidence did not amount to harmless error, there is no need for us to portray all evidentiary angles.

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.[4] We review the district court's evidentiary ruling for abuse of discretion. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011).

Santiago first argues that the so-called money evidence "was of questionable relevance" because the evidence showed that he "had only $5,000 when he arrived in the Virgin Isles, [which is] not enough to purchase [a kilogram of cocaine]." He avers that because there was no evidence "as to what [he] did with the $5,000 or that he joined his money with the money of his friends[,] . . . the government asked the jury to take too large a leap." These suppositions, however, are undermined by the record.

The Tortola customs officer testified that Santiago admitted that the money that each man carried on March 15 belonged to Santiago, and that Santiago had divided the money between them only to circumvent travel cash limits. The customs officer ultimately allowed the travelers to collectively retain about $14,000, and the government presented evidence that a bulk kilogram

---

[4]The focus of Santiago's evidentiary objection has evolved between trial and appeal. At trial, defense counsel objected to evidence pertaining to the price of a kilogram of cocaine in the different locales. On appeal, Santiago challenges the admission of evidence of the amount of money that he and his companions were carrying when traveling on March 15. Although the government notes in passing this apparent disparity, it does not argue failure to preserve. We need not focus on this procedural issue because Santiago's appellate argument fails on its merits.

of cocaine costs between $6,000 and $10,000 in the Virgin Islands. This evidence permitted the jury to rationally conclude that Santiago had the ability to purchase the amount of cocaine that he mailed from St. Thomas just two days after the Tortola customs encounter. Taken in context with the remainder of the story, the money evidence was plainly relevant to Santiago's knowledge of the contents of the package. See Fed. R. Evid. 401 (defining "relevant evidence"). Indeed, in his brief the appellant acknowledges, as he must, that the money evidence permitted the jury to infer he had "the means and intent to send drugs" and "knew he was, in fact, mailing drugs."[5] Accordingly, we reject the appellant's attempt to minimize the relevance of the money evidence.

As to "unfair prejudice," Santiago does not identify any. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008) (characterizing "unfair prejudice" as that which "inflame[s] the passions of the jurors"); United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000) (noting that "criminal propensity evidence" may cause unfair prejudice even if it is not highly emotionally provocative).

Despite quoting the "unfair prejudice" standard and citing to Rule 403 cases, the appellant points to no improper

_____

[5]We note that the appellant construes the acquittal verdict as the jury concluding that he was not "acting with anyone else," and, consequently, that "[h]is $5,000 must have been acting alone as well." Yet, the jury could very well have accepted the undisputed evidence that the $14,000 collectively retained by Santiago and one of his companions belonged to the appellant, and also determined that he acted alone with that money.

emotional inflammatory effect or other unfairly prejudicial impact caused by the money evidence, relying instead on an assertion that the admission of the evidence was not harmless error.[6] See United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998) (emphasizing that evidence is not unfairly prejudicial simply because it is "prejudicial to the defendant's interests"). A harmless error analysis, however, assumes that the district judge committed error. See, e.g., United States v. Whitney, 524 F.3d 134, 142 n.6 (1st Cir. 2008). As the appellant has not demonstrated error, we need not address whether such error would have been harmless.[7]

The conviction is **affirmed**.

---

[6]At oral argument, the appellant suggested a possible improper taint: that the jury may have viewed the unusually large amount of travel cash to be indicative of the defendant being a drug dealer. We generally do not consider new theories raised for the first time at oral argument. See United States v. Pulido, 566 F.3d 52, 60 n.4 (1st Cir. 2009). This new theory was not presented to the district judge and appears nowhere in the appellant's brief. In any event, it is highly unlikely in this case that the money evidence created a significant danger that the jury simply assumed that Santiago was a drug dealer rather than properly considering the March 15 encounter in the context of all of the circumstantial evidence pointing to his culpable knowledge of the contents of the package. See Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice" (emphasis added)).

[7]We note, however, that other evidence allowed the jury to conclude that Santiago knew the illegal contents of the package. For example, he admitted to law enforcement that he suspected it contained marijuana when he mailed it. Additionally, to the extent that the appellant now expresses concern as to how the jury should have relied on the money evidence when deliberating on the two charges, we are unmoved. No request for a limiting instruction was made at trial and we will not fault the district court in this case for failing to provide one sua sponte. See Lugo Guerrero, 524 F.3d at 14.