# United States Court of Appeals
## For the First Circuit

No. 12-1301

PIUS AWUAH; DENISSE PINEDA; JAI PREM;
RICHARD BARRIENTOS; ANTHONY GRAFFEO; MANUEL DA SILVA;
and all others similarly situated,

Plaintiffs, Appellees,

ALDIVAR BRANDAO; NILTON DOS SANTOS; GERALDO CORREIA; PHILLIP
BEITZ; MARIAN LEWIS; STANLEY STEWART; BENECIRA CAVALCANTE,

Plaintiffs,

v.

COVERALL NORTH AMERICA, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

Norman M. Leon, with whom Michael D. Vhay, Matthew J. Iverson,
and DLA Piper LLP were on brief, for appellant.
Hillary Schwab, with whom Shannon Liss-Riordan, Claret Vargas,
and Lichten & Liss-Riordan, P.C. were on brief, for appellees.

December 27, 2012

**LYNCH**, **Chief Judge**. This appeal is the latest development in long-running litigation[1] between Coverall North America, Inc., a company which contracts to provide commercial janitorial cleaning services to building owners or operators in the United States, and its "franchisees," who do the cleaning. Proceeding under federal diversity jurisdiction, the franchisees assert a variety of state-law claims against Coverall. The plaintiffs assert claims for breach of contract, misrepresentation, deceptive and unfair business practices, misclassification as independent contractors, and failure to pay wages due to them under, inter alia, Mass. Gen. Laws ch. 149, § 148.

Which of the various plaintiffs are subject to the arbitration provisions of the Franchise Agreement has been a continuing source of dispute. See, e.g., Awuah v. Coverall N. Am., Inc. (Awuah I), 554 F.3d 7, 11-13 (1st Cir. 2009) (where plaintiffs signed franchise agreements containing arbitration clauses, unconscionability of arbitration agreement should be decided by an arbitrator, but whether arbitration remedy is illusory should be decided by court). A class has been certified of franchisees who

---

[1] This case has an extensive history set forth in a number of opinions. See Awuah v. Coverall N. Am., Inc., 563 F. Supp. 2d 312 (D. Mass. 2008); Awuah v. Coverall N. Am., Inc. (Awuah I), 554 F.3d 7 (1st Cir. 2009); Awuah v. Coverall N. Am., Inc., 585 F.3d 479 (1st Cir. 2009); Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80 (D. Mass. 2010); Awuah v. Coverall N. Am., Inc., 740 F. Supp. 2d 240 (D. Mass. 2010); Awuah v. Coverall N. Am., Inc., 791 F. Supp. 2d 284 (D. Mass. 2011); Awuah v. Coverall N. Am., Inc., 952 N.E.2d 890 (Mass. 2011).

were not subject to arbitration, a portion of the much larger group of plaintiffs.

Appellees, who have been referred to as "Unbound Owners,"[2] are a subgroup of the plaintiffs who became Coverall franchisees by signing Consent to Transfer Agreements, or Guaranties to Coverall Janitorial Franchise Agreements, which did not themselves contain arbitration clauses, but which by reference incorporated obligations under Franchise Agreements that did contain such clauses. These appellees never received copies of the Franchise Agreement, but there is no suggestion in the record that they ever asked for copies or were denied copies of this agreement.

On February 10, 2012, the district court determined, in the course of ruling on a motion to expand the class of plaintiffs who could proceed in district court, that these plaintiff-appellees did not have to arbitrate their claims against Coverall. That was because, in its view, as a matter of contract construction, they did not have adequate notice of the arbitration clauses contained in the Franchise Agreements and so were not obligated to arbitrate. See Awuah v. Coverall N. Am., Inc. (Awuah II), 843 F. Supp. 2d 172 (D. Mass. 2012). Coverall has appealed this determination and the

_____

[2] Because Coverall uses the term "Unbound Owners" to refer to these plaintiff-appellees, we will also use this term, though we ultimately conclude that these plaintiffs are bound by the Franchise Agreement's arbitration clause.

-3-

court's refusal to stay proceedings as to these plaintiff-appellees pending arbitration.

We conclude that the district court erred. Massachusetts law, which governs this dispute, does not impose any such special notice requirement upon these commercial contractual provisions. Such a requirement, in any event, would be preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., which requires courts to place such arbitral agreements upon the same footing as other contracts.

I.

A.       Agreements Between Coverall and the Plaintiffs

Many (but not all) of the plaintiffs signed Franchise Agreements with Coverall providing that, with certain exceptions not implicated here,

> all controversies, disputes or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee (and Franchisee's owners, officers, directors and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual, which controversies, disputes or claims are not resolved in accordance with Paragraph 20 [concerning informal dispute resolution], shall be submitted promptly for arbitration.

Thirty-one other plaintiffs, including the appellees here, became Coverall franchisees either by signing Consent to Transfer Agreements ("Transfer Agreements") and Guaranties to

Coverall Janitorial Franchise Agreements ("Guaranties"), or by signing only the latter Guaranties. The Franchise Agreements permitted franchisees to "assign this Agreement to a person ('the assignee') meeting the qualifications then established by Coverall for granting new franchises, provided: . . . (ii) the assignee enters into the franchise agreement then used by Coverall for granting new franchises[.]" These thirty-one plaintiffs, however, did not sign the Franchise Agreements. Moreover, sixteen of these plaintiff-appellees, the Unbound Owners, never received a copy of the Franchise Agreement, but did execute the Transfer Agreements and/or the Guaranties.

The Transfer Agreements were each signed by Coverall, the (prior) franchisee, and the transferee. The terms of the Transfer Agreements, by which these plaintiffs became franchisees, varied. Of the fifteen plaintiffs who signed Transfer Agreements but did not receive copies of the Franchise Agreement, four plaintiffs -- Porfirio Aguilar, Marcelo Cardoso, Jose Santos, and Raimundo Lima -- signed Transfer Agreements stating that

> Transferee acknowledges that upon execution of the Guaranty as required by ¶ 1(A) of this Consent that Transferee shall become personally liable to Coverall for the amount stated in ¶ [7 or 9] of this Consent, and shall succeed to all of Franchisee's rights and obligations under Franchisee's Janitorial Franchise Agreement.

Another Unbound Owner, Givaldo Maltaroli, signed a Transfer Agreement which transferred to him only a 50% interest in a Coverall franchise, and provided that

> Transferee further acknowledges that upon execution of the Guarantee as required by ¶ 1(A) of this Consent, that Transferee shall likewise become personally liable to Coverall for the amount stated in ¶ 6(C) of this Consent, and shall become liable with the Franchisee for all of the obligations imposed by the Janitorial Franchise Agreement.

Ten other Unbound Owners signed Transfer Agreements stating that

> Transferee acknowledges that upon execution of the Guaranty as required by ¶ 1(A) of this Consent that Transferee shall become personally liable to Coverall for the amount stated in ¶ [6 or 8] of this Consent.

All sixteen plaintiffs who did not receive copies of the Franchise Agreement -- including Marildo Eloi, who did not sign a Transfer Agreement or a Franchise Agreement -- signed Guaranties providing in part that

> In consideration of, and as an inducement to Coverall North America, Inc. dba Coverall of . . . ("Coverall"), entering into a Janitorial Franchise Agreement ("the Agreement") dated . . . with [plaintiff] ("Franchisee"), the undersigned ("the Guarantor(s)") does hereby unconditionally guaranty, personally, the obligations of the Franchisee under the Agreement, as follows:

> 1. Guarantor(s) jointly, severally and unconditionally guaranties to Coverall performance of all responsibilities, duties, indebtedness and obligations of the Franchisee under the Agreement, including, but not limited to (a) payment of any fees due under the Agreement, including, but not limited to, initial fee, royalties, management fees, assignment fees, interest or late fees, training fees (if any) and fees for products, supplies or services furnished by Coverall to Franchisee; (b) obligations to hold harmless,

-6-

defend and indemnify Coverall and related parties; and (c) any and all advances, debts, obligations, notes and liabilities of the Franchisee incurred in connection with or as a result of the Agreement, previously, now, or hereafter made, incurred, or created, voluntary or involuntary and, however arising.

B.        The District Court's Certification of a Class

On September 22, 2011, the district court certified a class consisting of "all individuals who have owned a Coverall franchise and performed work for Coverall customers in Massachusetts at any time since February 15, 2004, who have not signed an arbitration agreement or had their claims previously adjudicated." See Awuah II, 843 F. Supp. 2d at 174. The effect of this was to separate out those franchisees who were not subject to arbitration "for the purposes . . . of calculating the . . . damages for members of the class." Status Conf. Tr. 3 (D. Mass. Sep. 22, 2011) (Civ. No. 07-10287).

On November 29, 2011, plaintiffs filed a motion for a court ruling on the scope of the class, arguing that "those who purchased their Coverall franchises through certain 'Consent to Transfer' agreements[3] that do not contain arbitration clauses" should be added to the class. Citing to federal cases brought under federal employment statutes, plaintiffs argued that "it is black-letter law in the First Circuit that an individual may not be

_____

[3] Plaintiffs apparently did not realize at this time that transferee plaintiff Eloi had signed neither a Franchise Agreement nor a Transfer Agreement.

-7-

bound to an arbitration clause if he does not have notice of it," and that "Coverall . . . has not produced any evidence that the transferees were ever themselves shown the transferors' franchise agreements or that they were in any other way informed about the existence of an arbitration clause." Coverall responded that "[p]laintiffs' assertion that some specific level of notice is required before the Transferee-Owners may be bound by their agreements to arbitrate is contrary to settled law."

On February 10, 2012, the district court granted plaintiffs' motion in part and denied it in part. See Awuah II, 843 F. Supp. 2d at 181-82. The court stated that "[t]he First Circuit has repeatedly held that an individual may not be bound to an arbitration clause if he does not have notice of it." Id. at 179. As we discuss later, the cases that the court cited do not support that broad proposition. The court found that some of the transferee plaintiffs had received copies of the Franchise Agreement and therefore had notice of the arbitration clause. Id. at 180-81. With respect to "Transferees who signed the Consent to Transfer Agreements[4] and did not obtain a copy of Coverall's

_____

    [4] The district court apparently also did not recognize at this time that one transferee plaintiff, Eloi, had signed a Guaranty but not a Transfer Agreement. The district court's resolution of plaintiffs' motion to expand the class relied not on whether transferees had signed Transfer Agreements, but on whether they had received copies of the Franchise Agreement. We will thus treat Eloi, who did not receive a copy of the Franchise Agreement, as included within the court's class expansion.

-8-

Franchise Offering Circular," the court concluded that "Coverall did not give the Transferees information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate." Id. at 180. The court expanded the class to include these new plaintiffs who had not been given copies of the Franchise Agreement, referred to in the documents they did receive. Id. at 181-82.

On February 23, 2012, Coverall filed a motion to stay proceedings as to the new class members pending arbitration pursuant to 9 U.S.C. § 3. The district court denied this motion the next day. Coverall timely appealed the court's February 10, 2012 and February 24, 2012 rulings on March 7, 2012. Proceedings have continued in the district court during the pendency of this appeal.

## II.

The FAA provides that "[a]n appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title[.]" 9 U.S.C. § 16(a)(1)(A). "The arbitrability of this dispute turns on the interpretation of contractual terms, a question of law which we can determine in the first instance." Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st Cir. 1993). We do so de novo. See Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Local 99, 497 F.3d 83, 89 (1st Cir. 2007).

A.            The Threshold Question of Arbitrability

The FAA provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002).  Parties may delegate questions of arbitrability to the arbitrator, but "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

This case is different from the prior appeal to us in Awuah I, where a different group of plaintiffs conceded that they "had franchise agreements containing arbitration clauses," and those arbitration clauses incorporated by reference rules delegating certain issues to the arbitrator.  554 F.3d at 9.  In Awuah I, we held that the arbitrator should decide whether the arbitration clause was unconscionable, id. at 12, but that the court should determine whether the arbitration remedy in this case was illusory.  Id. at 13.  Here the district court was correct, as to this different group of plaintiffs, to address the "predecessor

question of whether there was an agreement at all to arbitrate." Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999); see also Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd., 683 F.3d 18, 25 (1st Cir. 2012) ("There is no dispute here that the district court, quite appropriately, first looked for whether there was a valid, contractual agreement to arbitrate."). The question of whether the Unbound Owners assumed obligations under the arbitration clause of the Franchise Agreements is for the court. See McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) ("[A] party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims. . . . The federal policy presumes proof of a preexisting agreement to arbitrate disputes arising between the protagonists.") (emphasis omitted). Nonetheless, the district court got the answer to the question wrong, as a matter of both state and federal law.

B.        Incorporation by Reference of the Arbitration Clause

"When deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" Rosenberg, 170 F.3d at 19 (alteration in original) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The district court determined, and the parties do not

-11-

dispute, that Massachusetts law governs this controversy.  See Awuah II, 843 F. Supp. 2d at 175.

"'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption,[5] piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[6] . . . .'" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001)).  Under Massachusetts law, "'the language used in a contract to incorporate extrinsic material by reference . . . must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'"  NSTAR Elec. Co. v. Dep't of Pub. Utils., 968

---

[5] Coverall argues that the Transfer Agreements should be read as assignments, and that the Unbound Owners therefore assumed all of the prior franchisees' obligations under their Franchise Agreements.  The Transfer Agreements merely state that "Franchisee executed a Janitorial Franchise Agreement and related documents (the 'Franchise Agreement') on [date], under which the Franchisee was to operate a Coverall janitorial franchise (the 'Franchise')," and that "Franchisee desires to sell the following assets of his Franchise to Transferee, and Transferee desires to purchase the following assets of the Franchise."  This language does not accomplish an assignment of the prior franchisees' rights and obligations under the Franchise Agreement.

[6] Coverall also argues on appeal that because the Unbound Owners enjoyed the benefits of the Franchise Agreement, they are bound by the arbitration clause of this agreement under the doctrine of equitable estoppel.  Coverall did not make this argument before the district court and we do not address it.

N.E.2d 895, 905 (Mass. 2012) (quoting Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d 1339, 1345 (Fed. Cir. 2008)).

The Transfer Agreements, as we have described, do not all use the traditional language of "incorporating by reference" the arbitration clause of the Franchise Agreement. But no such magic terms are required. For some Transfer Agreements at issue, other language in the agreements clearly communicated the purpose of incorporating the arbitration clause. These agreements[7] provided that the transferees "succeed to all of Franchisee's rights and obligations under Franchisee's Janitorial Franchise Agreement," or "become liable with the Franchisee for all of the obligations imposed by the Janitorial Franchise Agreement." Since the arbitration clause of the Franchise Agreement creates a right and an obligation to submit "all controversies, disputes or claims between Coverall . . . and Franchisee" for arbitration, these Transfer Agreements sufficiently incorporated by reference the arbitration clause.

Moreover, the Transfer Agreements are not the only pertinent documents executed by the parties. All of the Unbound Owners also signed Guaranties under which they "jointly, severally

---

[7] Other Transfer Agreements included no reference to the arbitration clause or to general rights and obligations under the Franchise Agreement, so those agreements do not of themselves incorporate the arbitration clause and require referral to arbitration. But the Transfer Agreements are not the only agreements which require interpretation.

-13-

and unconditionally guarantie[d] to Coverall performance <u>of all</u> <u>responsibilities, duties</u>, indebtedness and <u>obligations</u> of the Franchisee under the [Franchise] Agreement" (emphasis added).  By like reasoning, they incorporate the responsibilities, duties, and obligations with respect to arbitration.

Appellees argue, to the contrary, that:

> This provision, which does not mention the arbitration clause, cannot suffice to bind these workers to arbitrate their claims with Coverall.  Indeed, it is clear from the examples that the Guaranty provides of what these "responsibilities, duties, indebtedness and obligations" are that they all relate to the workers' substantive obligations to pay money and/or otherwise be financially indebted to Coverall in exchange for cleaning work.

We disagree.  "'"All" means "all," or if that is not clear, all, when used before a plural noun . . . means "[t]he entire or unabated amount or quantity of, the whole extent, substance, or compass of, the whole."'"  <u>Instrument Indus. Trust ex rel. Roach</u> v. <u>Danaher Corp.</u>, No. 033960BLS, 2005 WL 3670416, at *6 (Mass. Super. Nov. 28, 2005) (quoting <u>Hollinger, Inc.</u> v. <u>Hollinger Int'l, Inc.</u>, 858 A.2d 342, 377 (Del. Ch. 2004)).  Moreover, the Guaranties' explicit references to "responsibilities," "duties," and "obligations" undercut appellees' claim that the Guaranties only concerned "obligations to pay money."  Massachusetts case law leads to this result.  <u>See, e.g.</u>, <u>Mass. Org. of State Eng'rs & Scientists</u> v. <u>Labor Relations Comm'n</u>, 452 N.E.2d 1117, 1122 (Mass. 1983) (discussing "<u>duty</u> to arbitrate") (emphasis added); <u>Norton</u> v. <u>Mass. Bay Transp. Auth.</u>, 336 N.E.2d 854, 855 (Mass. 1975) (discussing

-14-

"obligation to arbitrate") (emphasis added). The Guaranties "clearly communicate[d] that the purpose of th[is] reference [was] to incorporate" responsibilities, duties, and obligations under the Franchise Agreement, NSTAR Elec. Co., 968 N.E.2d at 905, which included those under the arbitration clause.

At oral argument, appellees belatedly raised a new argument, citing Black's Law Dictionary to support the proposition that "what the Guaranty says is, the franchisee has to do these things, but if the franchisee doesn't do it, you're on the hook." This is too late, so the argument is waived, see United States v. Santiago-Pérez, 666 F.3d 57, 60 n.6 (1st Cir. 2012), but beyond that, it does not work. The Guaranties expressly identify the transferees as both the "Franchisees" and the "Guarantors." Plaintiff-appellees are not just guarantors, they are also franchisees. They are like the other franchisees who signed the Franchise Agreement directly and it would be odd in these circumstances to treat the two groups differently. The Guaranties do not merely impose responsibilities upon transferees for the obligations of other persons.

C.      The District Court's Erroneous Adoption of a Special Heightened Notice Requirement for Such Commercial Arbitration Clauses

The district court's reasoning essentially adopted the view that arbitration clauses cannot be enforced unless there is heightened notice to the party sought to be bound. It did not

-15-

purport to find this heightened notice requirement in state law, but rather in a series of cases from this court, cases where the underlying claim was based, unlike here, on special provisions in federal employment statutes.

Appellees argue not only that they did not enter into the arbitration clause in the Franchise Agreement, but that "it would be unconscionable to bind [them] to an arbitration clause that they never even saw," citing Skirchak v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007). Skirchak is clearly distinguishable from this case, since in Skirchak "the parties . . . affirmatively stated their intention that the court decide the unconscionability . . . question[]." Id. at 56. There is no such agreement between the parties here. Instead, since we conclude that the Unbound Owners effectively entered into an arbitration agreement with Coverall, any claim of the unconscionability of this agreement is for the arbitrator, as in Awuah I. See 554 F.3d at 12.

In Massachusetts courts, it has long been the rule that "[t]ypically, one who signs a written agreement is bound by its terms whether he reads and understands them or not." St. Fleur v. WPI Cable Sys./Mutron, 879 N.E.2d 27, 35 (Mass. 2008); see also Haufler v. Zotos, 845 N.E.2d 322, 333 (Mass. 2006); Cohen v. Santoianni, 112 N.E.2d 267, 271 (Mass. 1953); Wilkisius v. Sheehan, 155 N.E. 5, 6 (Mass. 1927); Atlas Shoe Co. v. Bloom, 95 N.E. 952, 953 (Mass. 1911); Rice v. Dwight Mfg. Co., 2 Cush. 80, 87 (Mass.

1848).  Massachusetts law is explicit that it does not impose a special notice requirement upon agreements containing arbitration clauses.  See St. Fleur, 879 N.E.2d at 34-35 (error to conclude that party "bore the risk of [counter-party's] ignorance of the nature and contents of the arbitration agreement").

Moreover, the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This clause preempts state-law "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011).  Indeed, the Supreme Court recently vacated a state supreme court decision which applied a state law standard inconsistent with the FAA and remanded for application of the FAA rule.  Nitro-Lift Tech., LLC v. Howard, 133 S. Ct. 500 (2012) (per curiam).  Even if the district court had identified a principle of state law that imposed a special notice requirement before parties such as these could enter into an arbitration agreement, as it did not, such a principle would be preempted by the FAA.  See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (holding that FAA displaces Montana statute that "conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally"); Morales v. Sun Constructors,

-17-

Inc., 541 F.3d 218, 224 (3d Cir. 2008) ("[A]pplying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA.").

In addition, the cases from which the district court purported to find a special notice requirement for these contracts do not impose such a requirement. To begin, the district court erred in consulting cases arising under federal law rather than Massachusetts law, which governs here. State law imposes no such heightened notice requirement upon contracts, including arbitration agreements. Moreover, two of the three cases from this court that the district court cited -- McCarthy, 22 F.3d at 354-55, and Brennan v. King, 139 F.3d 258, 264 (1st Cir. 1998) -- stood not for the proposition that a special notice requirement applied to arbitration agreements, but only for the unremarkable principle that "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims." McCarthy, 22 F.3d at 354-55 (emphasis omitted); see also Brennan, 139 F.3d at 264 (quoting McCarthy, 22 F.3d at 354-55).

The district court also cited Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546 (1st Cir. 2005), which involved claims of violation of federal statutes whose terms and language provide particular protections for claimants. Campbell concerns language in the ADA which provides that "[w]here appropriate and to

the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter." 42 U.S.C. § 12212. Campbell interpreted this language, 407 F.3d at 553-55, as did Rosenberg, a prior case addressing identical language in the Civil Rights Act of 1991. 170 F.3d at 18-19. These cases construed this language to require "minimally sufficient notice," Campbell, 407 F.3d at 559, or "some minimal level of notice," Rosenberg, 170 F.3d at 21, that those statutory claims are subject to arbitration. Campbell limited its holding to "purported waiver[s] of the right to litigate ADA [Americans with Disabilities Act] claims." 407 F.3d at 559. In turn, Rosenberg expressly stated that "this case does not implicate any broader questions of enforceability of the arbitration clause when the 1991 CRA [Civil Rights Act] or ADEA [Age Discrimination in Employment Act] are not involved." 170 F.3d at 19.

The Supreme Judicial Court of Massachusetts has reached the same conclusion that we do. It has stated that "[t]he Rosenberg court explicitly limited its holding to claims brought under Federal civil rights laws" and held that "the Rosenberg holding does not apply" in the absence of "the precise wording of Federal civil rights statutes." St. Fleur, 879 N.E.2d at 35. The

-19-

district court erred in applying the requirements of <u>Campbell</u> and <u>Rosenberg</u> to appellees' state-law claims.[8]

### III.

We <u>reverse</u> the district court's February 10, 2012 order granting plaintiffs' motion for ruling on scope of class to the extent it expanded the class certified on September 22, 2011 to include the Unbound Owners, and its February 24, 2012 order denying Coverall's motion to stay proceedings pending arbitration. We <u>remand</u> for further proceedings consistent with this opinion, including issuance of a stay of the Unbound Owners' claims pending arbitration.

<u>So ordered.</u> No costs are awarded.

---

[8] "The appropriateness analysis is case-specific" and "fact-dependent." <u>Campbell</u>, 407 F.3d at 554. The circumstances of this case differ markedly from those in <u>Campbell</u> and <u>Rosenberg</u>. If the test described in those cases were applicable here -- which it is not -- we do not suggest that Coverall failed to provide minimally sufficient notice to the Unbound Owners.