# United States Court of Appeals
## For the First Circuit

No. 13-1910

DOUGLAS G. BEZIO,

Plaintiff, Appellant,

v.

SCOT E. DRAEGER, JOHN M.R. PATTERSON, CALEB C.B. DUBOIS &
BERNSTEIN, SHUR, SAWYER AND NELSON, P.A. d/b/a BERNSTEIN SHUR,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Valeriano Diviacchi for appellant.
George T. Dilworth, with whom Michael L. Buescher and Drummond
Woodsum were on brief, for appellees.

December 16, 2013

**LYNCH, Chief Judge**.   The question on appeal is whether the district court erred in enforcing an arbitration clause in an attorney-client engagement letter as to malpractice and unfair practice claims brought by a former client under Maine law.

The client is Douglas Bezio, who sued his former law firm of Bernstein, Shur, Sawyer & Nelson (BSSN) and individual defendants, alleging malpractice and violations of Maine's Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 213, as well as a fee dispute.   Defendants filed a motion to compel arbitration and dismiss the action, which the district court allowed under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.   Bezio v. Draeger, No. 2:12-CV-00396-NT, 2013 WL 3776538, *2-4 (D. Me. July 16, 2013). We affirm.

It is clear that Maine professional responsibility law for attorneys permits arbitration of legal malpractice claims so long as there is no prospective limitation of the firm's liability. It is also clear that Maine law, like the FAA, evidences no hostility to the use of the arbitral forum, and Maine would enforce this arbitration of malpractice claims clause.

I.

The basic facts are not disputed.   Bezio was employed as a licensed agent and investment advisor representative of Investors Capital Corporation.   On March 9, 2011 the Maine Office of Securities issued Bezio a Notice of Intent to revoke his license

-2-

and seek other penalties, alleging he had violated Maine law, as well as Financial Industry Regulatory Authority (FINRA) and National Association of Securities Dealers (NASD) rules as to his investment clients in Maine. Bezio then sought to retain BSSN to represent him in the enforcement action.

Before undertaking that representation, on March 18, 2011, Attorney Draeger of BSSN[1] sent Bezio an engagement letter (the "Agreement") setting forth the terms of BSSN's legal representation. The Agreement stated, as to the scope of BSSN's representation, that the firm would "represent you with respect to securities regulatory matters before the Maine Office of Securities and related matters."

The Agreement also included an arbitration provision as to disputes that provided:

> **<u>Arbitration</u>**
> If you disagree with the amount of our fee, please take up the question with your principal attorney contact or with the firm's managing partner. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute that is not readily resolved, you shall have the right to submit the fee dispute to arbitration under the Maine Code of Professional Responsibility. Any fee dispute that you do not submit to arbitration under the Maine Code of Professional Responsibility, <u>and any other dispute that arises out of or relates to this agreement or the services provided by the law</u>

---

[1] Bezio also named John M.R. Patterson and Caleb C.B. DuBois, both attorneys at BSSN, in his complaint.

-3-

> firm shall also, at the election of either party, be subject to binding arbitration. Either party may request such arbitration by sending a written demand for arbitration to the other.[2]

(emphasis added). This clause appeared on pages six and seven of the Agreement and was not highlighted in the document.

Bezio received the draft Agreement, revised the advanced fee payments portion by hand, initialed that revision, and initialed each page. He signed and dated the Agreement on March 22, 2011, and returned it to Draeger.

The events which led to the end of the representation are not material, but other facts are material. First, no one at the firm communicated with Bezio to discuss further with him the consequences of submitting malpractice and other claims to arbitration, including that this involved giving up jury trial claims. At no point was there a discussion between Bezio and BSSN of arbitration of malpractice claims, and the firm did not suggest to Bezio that he have the arbitration agreement reviewed independently.

Second, Bezio's previous experience with arbitration is also material for our purposes. Bezio was no stranger to arbitration proceedings when he signed the Agreement. In August 2009, for example, Bezio's former clients initiated a FINRA

---

[2] The remainder of the clause concerns the procedures for arbitration and a choice of law provision, none of which are at issue.

arbitration against him and his former employer, LPL Financial Corporation (LPL), asserting thirteen claims, including breach of fiduciary duty. In addition, in September 2010 he commenced a FINRA arbitration proceeding against LPL after it terminated him based on the conduct at issue in the August 2009 FINRA arbitration.

## II.

Bezio does not dispute that the clause is enforceable as to fee disputes. He argues, though, that the clause is not enforceable as to malpractice claims for a variety of reasons. On appeal, Bezio has made different claims in his briefs and at oral argument.

He asserts that the Maine Rules of Professional Conduct do not permit arbitration of malpractice disputes unless the attorneys have specifically pointed out and discussed fully the risks and possible consequences of such a clause and the client has given informed consent. We refer to these as "informed consent preconditions." For this reading of Maine law, he relies on the Supreme Court of Louisiana's opinion in Hodges v. Reasonover, 103 So.3d 1069, 1077 (La. 2012). More specifically, the Louisiana Supreme Court held in Hodges:

> At a minimum, the attorney must disclose the following legal effects of binding arbitration, assuming they are applicable:
> - Waiver of the right to a jury trial;
> - Waiver of the right to an appeal;
> - Waiver of the right to broad discovery under . . . Federal Rules of Civil Procedure;

-5-

- Arbitration may involve substantial upfront costs compared to litigation;
- Explicit disclosure of the nature of claims covered by the arbitration clause, such as fee disputes or malpractice claims;
- The arbitration clause does not impinge upon the client's right to make a disciplinary complaint to the appropriate authorities;
- The client has the opportunity to speak with independent counsel before signing the contract.

Id. at 1077.

Bezio then argues that under Maine law attorneys are fiduciaries in their relationships with their clients. These preconditions to ensure informed consent as to arbitration are no different than the rules in Maine governing fiduciaries generally, he says, but cites no authority from Maine. He argues that adoption of the Hodges preconditions approach would mean there is no special rule being carved out for arbitrations by fiduciaries who are attorneys, and so no issue of preemption can arise under the FAA.

We clear away two of his arguments. He argues that arbitration clauses must spell out that they apply to malpractice claims by referring explicitly to "malpractice." The argument that malpractice claims do not fall within the broad coverage language of the contract is self-evidently frivolous. He also argues that referring malpractice disputes to arbitration is, in his view, slanted toward law firms. We immediately reject this as the type

-6-

of hostility to arbitration that is forbidden by both Maine law and the Supreme Court under the FAA. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1749 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration."); Roosa v. Tillotson, 695 A.2d 1196, 1197 (Me. 1997) ("Maine has a broad presumption favoring substantive arbitrability . . . .").

Bezio finally argues that the arbitration clause is inherently unconscionable and against public policy under Maine law because of the lack of the informed consent preconditions. As a result, a court should decline to enforce an arbitration clause where neither the clause nor any other communication "adequately disclose[d] the full scope of the arbitration clause and the potential consequences of agreeing to binding arbitration." Hodges, 103 So.3d at 1076.

## III.

Our review of a decision to send a case to arbitration based on the language of the arbitration agreement is de novo. Kristian v. Comcast Corp., 446 F.3d 25, 31 (1st Cir. 2006). In deciding whether an agreement to arbitrate is to be enforced, we normally apply ordinary state-law principles that govern the formation of contracts, including validity, revocability, and

enforceability of contracts.[3]  Awuah v. Coverall N. Am., Inc., 703
F.3d 36, 42 (1st Cir. 2012).

Still, state laws may not, under section 2 of the FAA,
impose limitations which are special to arbitral clauses.  See
Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996)
("By enacting § 2 [of the FAA], . . . Congress precluded States
from singling out arbitration provisions for suspect status,
requiring instead that such provisions be placed 'upon the same
footing as other contracts.'" (quoting Scherk v. Alberto-Culver
Co., 417 U.S. 506, 511 (1974))).  The district court relied on this
principle in holding that if it were true that Maine law had
adopted the Hodges view of informed consent preconditions, then
Maine law would be displaced by the FAA.  Bezio, 2013 WL 3776538,
at *2-3.  We choose a different route.  We think it is clear that
Maine law permits attorneys to enforce arbitration clauses like the
one at issue here.

Bezio argues his position is supported by the fact that
under Maine law attorneys are fiduciaries.  He points to Anderson
v. Neal, 428 A.2d 1189, 1191 (Me. 1981), which states "the
fundamental proposition that attorney and client necessarily share
a fiduciary relationship of the highest confidence," and from that
fact alone, he argues that fiduciaries must obtain informed consent

---

[3]  We bypass the question of whether Maine law would apply
fiduciary standards to a retention agreement before there was an
attorney-client relationship.

to any arbitration of malpractice claims. From this proposition, Bezio reasons, Maine professional liability law requires that preconditions be followed to obtain informed consent as to lawyer-client arbitration provisions, as Louisiana law does. We note that Rule 1.4(b) of the Maine Rules of Professional Conduct says that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." This will vary by client.

Independently of his fiduciary obligation arguments, Bezio correctly notes that the Maine Rules of Professional Conduct prohibit agreements which prospectively limit attorney liability. Me. R. Prof'l Conduct 1.8(h)(1). He argues that the arbitration clause is an improper attempt to do so.

The Maine Law Court has not addressed the precise claim Bezio makes. Nonetheless, we think the answer is clear based on Opinion 170 of the Law Court's Professional Ethics Commission, the Law Court's not having expressed disagreement with Opinion 170 over the almost fifteen years since it issued; the views of the ABA, on which the Law Court gives weight on ethics matters; and Maine's strong policy of supporting arbitration agreements, embodied in the Maine Uniform Arbitration Act, Me. Rev. Stat. tit. 14, §§ 5927-5949.

The Law Court adopted Bar Rule 11, which created a Professional Ethics Commission. The Maine Professional Ethics

Commission, as it is authorized to do by the Law Court Rule 11(c), has issued a pertinent advisory opinion, Opinion 170. In 1999, the Commission was asked to address whether attorneys may enter into arbitration agreements with clients on matters other than fees. The Commission's Advisory Opinion 170 holds (over a dissent) that: "a lawyer and a client may indeed, under the Maine Bar Rules, include in their initial engagement agreement a clause compelling arbitration of any and all malpractice claims as long as the clause does not preclude the client from requiring resolution of any fee disputes pursuant to Rule 9." Me. Prof'l. Ethics Comm'n, Opinion 170: Attorneys' and Clients' Agreement to Arbitrate Future Malpractice Claims (Dec. 23, 1999) ("Opinion 170").

Further, on the question of whether an agreement to arbitrate malpractice claims constitutes a prohibited agreement to prospectively limit the lawyer's liability, the Commission in Opinion 170 answered clearly in the negative.[4] The advisory opinion held that a "mutual agreement on a neutral forum within

---

[4] Bezio asserted that this arbitral clause was a prohibited limitation on a lawyer's liability because arbitrations of malpractice claims inherently favor the lawyer. The Commission squarely rejected this line of argument, reasoning:

> Perhaps if a particular forum had rules that themselves limited liability, then selection of such a forum could fairly be said to limit liability indirectly. Or if the arbitration agreement were a sham, such as an agreement to arbitrate before the lawyer's partner, then one could argue that its practical effect was to limit liability. Mutually agreed upon arbitration pursuant to the state and federal acts entail no such liability limiting rules.

Opinion 170.

which to adjudicate a lawyer's future liability" is simply not an agreement "limiting the lawyer's liability." Id. Interestingly, the Hodges opinion, on which Bezio otherwise relies, agrees with Maine in its rejection of this portion of Bezio's argument. Hodges, 103 So.3d at 1073-74.

The Commission majority reasoned that the Rules themselves did not prohibit such arbitration agreements, and that a contrary interpretation would be in conflict with Maine's broad and strong presumption favoring substantive arbitration, set out both in the Maine Uniform Arbitration Act, Me. Rev. Stat. tit. 15, §§ 5927-5949, and case law, Roosa, 695 A.2d at 1197.[5]

Significantly, the Commission also addressed the question of advice the lawyer must give to a client before entering into a dispute arbitration agreement:

> Finally, there is the related issue of whether the lawyer must advise the client to obtain independent advice before entering into an agreement to arbitrate prospective disputes. The theory supporting such a requirement would be that the lawyer and client have a conflict of interest on the matter. See Maine Bar Rule 3.4(f)(2). Yet this is true in theory of everything that is the engagement agreement, most especially, for example, the percentage fee provision in a contingent fee agreement. We do think that the arbitration clause should be clear and should expressly reserve both the

---

[5]  The Commission noted that arbitration clauses provided benefits to clients as well as lawyers. It acknowledged that other jurisdictions were split on the issue, but felt that some contrary jurisdictions were motivated by a distaste for arbitration. See Opinion 170.

-11-

> client's right to compel Rule 9 arbitration over any fee dispute and the ability to file grievance complaints under Bar Rule 7.1(a), but we do not conclude that the presence of such an arbitration clause in an engagement agreement, without more, requires that the client be advised to consult other counsel.

Opinion 170. Plainly, the Commission has expressly rejected Bezio's "informed consent" argument.

It has been almost fifteen years since the Commission issued this Opinion, and the Law Court has taken no action to displace that Opinion or indicate to the Maine bar that attorneys may not rely on it.

Additionally, the Law Court has looked to ABA Ethics Opinions for guidance on professional ethics issues. See, e.g., Corey v. Norman, Hansen & DeTroy, 742 A.2d 933, 941 (Me. 1999). The American Bar Association reached the same conclusion as Opinion 170 in 2002, when it issued a formal ethics opinion stating: "mandatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002).

Finally, as the Ethics Commission noted, Maine has adopted its own Uniform Arbitration Act and favors arbitration. See, e.g., Barrett v. McDonald Invs., Inc., 870 A.2d 146, 149 (Me. 2005) ("Maine has a broad presumption in favor of arbitration.").

We do not think the Law Court would depart from a generally accepted practice such as this, particularly when this approach is also consistent with the purpose of the FAA. We have previously upheld arbitration of attorney malpractice claims under New York law. See Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 14 (1st Cir. 2001) ("The Supreme Court described the FAA's purpose as 'ensuring that private arbitration agreements are enforced according to their terms.'" (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989))).

That other jurisdictions may follow different interpretations of their professional liability rules is of no moment. At present we see no basis to conclude that Maine has adopted either Bezio's arguments or the Louisiana court's view in Hodges of lawyer-client arbitration of malpractice disputes, or that it ever will.

We also reject Bezio's argument, whether or not preserved, that as a matter of generally applicable contract defenses, Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010), Maine law would find this arbitration clause to be unconscionable and would not enforce it. Bezio is nowhere close to meeting the requirements of Maine law for unconscionability. See Bither v. Packard, 98 A. 929, 933 (Me. 1916) ("[S]uch unconscionableness or such inadequacy [of a contract] should be

-13-

made out as would (to use an expressive phrase) shock the conscience, and amount in itself to conclusive and decisive evidence of fraud."). There is nothing inherently unconscionable about enforcing an arbitration clause encompassing malpractice claims between an attorney and a client. The clause is neither procedurally nor substantively unconscionable. See Bose Corp. v. Ejaz, 732 F.3d 17, 23 (1st Cir. 2013) (describing two-part unconscionability inquiry under Massachusetts law).

There is absolutely no allegation or evidence that BSSN somehow fraudulently induced Bezio to enter into this contract. He made changes to the draft agreement and signed and initialed the pages, and had ample time to review the contract independently. Indeed, were more needed, the record is clear that Bezio knew very well from his past experience with FINRA arbitrations what arbitration was and the consequences of signing such a clause.[6]

IV.

The judgment of the district court granting the motion to compel arbitration and dismissing the action is affirmed. Costs are awarded to BSSN.

---

[6] Bezio's argument that the law firm waived any right to seek arbitration by trying to expedite resolution of this case is utterly without merit.