OLGA ST. FLEUR vs. WPI CABLE SYSTEMS/MUTRON.

Middlesex. November 5, 2007. - January 4, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Federal Arbitration Act. Anti-Discrimination Law,* Arbitration. *Uniform Arbitration Act. Contract,* Arbitration, Specific performance. *Fraud. Statute,* Federal preemption. *Words,* "Proceed summarily."

In the circumstances of an action to enforce an arbitration agreement, a Massachusetts court is not required to follow the procedure set forth in 9 U.S.C. § 4, the Federal Arbitration Act (Federal act), in the application of State-law contract defenses to determine the validity of the arbitration agreement, but rather may apply the provisions of the Massachusetts counterpart, G. L. c. 251, § 2, which requires an expedited evidentiary hearing on a dispute as to a material fact, a procedure which, by placing arbitration agreements on at least the same footing as other contracts, does not undermine the purposes of the Federal act and is thus not preempted by it. [348-354]

In an action brought in Superior Court by an employee against her former employer, alleging claims of discrimination and harassment based on the employee's race, sex, and national origin, the judge erred in denying the employer's motion to dismiss the complaint and compel arbitration, brought on the ground that the employee had signed an agreement to arbitrate such claims, where the judge mistakenly concluded that the employer bore the risk of the employee's ignorance of the nature and contents of the arbitration agreement and that the court would only enforce an arbitration agreement where "appropriate" [354-355]; further, where the judge failed to conduct an evidentiary hearing to determine the existence of such an agreement, in light of the employee's production of evidence sufficient to sustain a claim of fraud in the inducement, this court remanded the matter to the Superior Court for such proceedings [355-356].

In an action in Superior Court to enforce an arbitration agreement, a claim that the plaintiff was fraudulently induced to enter into the agreement, an issue that went solely to the making of the agreement to arbitrate, was one for a judge, and not an arbitrator, to resolve. [356]

CIVIL ACTION commenced in the Superior Court Department on February 3, 2005.

A motion to compel arbitration and to dismiss the complaint was heard by *Leila R. Kern,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph F. Hardcastle* for the defendant.

*Howard I. Wilgoren* for the plaintiff.

The following submitted briefs for amici curiae:

*Beverly I. Ward* for Massachusetts Commission Against Discrimination.

*Robert S. Mantell & Patti A. Prunhuber* for Massachusetts Employment Lawyers Association & another.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan* for New England Legal Foundation.

SPINA, J. WPI Cable Systems/Mutron (WPI) appeals pursuant to G. L. c. 251, § 18 (*a*) (1), from the denial of its motion to dismiss the discrimination complaint of Olga St. Fleur, a former employee, and to compel arbitration of that complaint, where the subject matter of her complaint was covered expressly by an arbitration agreement. We transferred the case to this court on our own motion. We now vacate the order denying WPI's motion and remand this case to the Superior Court for a hearing to determine whether the parties entered into an agreement to arbitrate.

*Background.* In July, 2000, WPI hired St. Fleur to work at its assembly plant in Chelsea. In February, 2002, she was asked to sign a document under conditions that are hotly disputed.

St. Fleur presented an affidavit in which she asserts that the general manager of the WPI facility approached her in February, 2002.[1] He asked her, "Can you please sign this for me?" "What is this?" she replied. He answered, "It is nothing. It is just something if we have a disagreement by signing this it tells you that you agree to sit down and discuss it with us." The general manager gave her a single page to sign, and St. Fleur asked him where the rest of the document was. He said that the office manager was working on it, and he told St. Fleur, "Don't worry about it. I will put the paper you signed with the rest of the papers that [the office manager] is working on." He also

---

[1]St. Fleur and WPI filed their affidavits in connection with WPI's motion to dismiss St. Fleur's complaint and compel arbitration or, alternatively, to stay proceedings.

told her, "The papers [the office manager] is working on say what I just told you," and "Everybody is getting the same thing and you have to sign it." The page that St. Fleur signed does not contain the word arbitration,[2] and the general manager did not tell her that she was signing an arbitration agreement.

WPI, on the other hand, presented an affidavit from Joseph Galli, St. Fleur's supervisor at the time, asserting that, in September, 2001, he delivered to St. Fleur the company's new arbitration policy, a memorandum explaining the new policy, and the arbitration agreement itself. Her supervisor also explained that St. Fleur should feel free to have a lawyer look at the agreement. WPI presented, in addition, an affidavit from Nicolletta Crowley, a WPI human resources administrator, asserting that most WPI employees signed the arbitration agreement in September, 2001. St. Fleur, however, did not. To employees who had not yet signed the arbitration agreement, WPI sent in February, 2002, a memorandum asking them either to sign the arbitration agreement or to confirm their refusal to sign the arbitration agreement. Two of St. Fleur's colleagues confirmed their refusal to sign, but St. Fleur chose to sign the arbitration agreement.

The arbitration agreement provides that the parties to the agreement waive all rights to a jury trial and agree to resolve through arbitration any claims against WPI arising out of the employee's employment with or termination from WPI.[3] The agreement specifically states that the parties are to resolve through arbitration any claims of discrimination or harassment based on race, sex, or national origin.

In June, 2004, St. Fleur filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) alleg-

---

[2]The page states in capital letters: "EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES CAREFULLY READING THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND ENTERING INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. EACH PARTY FURTHER ACKNOWLEDGES HAVING THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT DESIRED."

[3]The arbitration agreement expressly states that an employee is not precluded from filing a complaint with a State or Federal administrative agency.

ing that, on account of her race, sex, and national origin, she had suffered discrimination and harassment at WPI. Specifically, she claimed that she was subjected to "harassment, disparate terms and conditions of employment, a hostile work environment, and wrongful termination." MCAD dismissed her complaint for lack of probable cause.

Thereafter, St. Fleur filed her complaint in the Superior Court alleging claims of discrimination and harassment based on her race, sex, and national origin. WPI moved to dismiss the complaint and compel arbitration or, alternatively, to stay proceedings (WPI's motion) on the ground that St. Fleur had agreed to arbitrate her claims of employment discrimination and harassment. St. Fleur contends that the alleged arbitration agreement was unenforceable because her supervisor had induced her to sign the agreement by misrepresenting the nature and contents of the agreement.

After a nonevidentiary hearing on WPI's motion, a judge in the Superior Court denied the motion, apparently on the grounds that WPI bore the risk of St. Fleur's ignorance and that enforcement of the arbitration agreement would not have been "appropriate." At no time did the judge conduct an evidentiary hearing or trial to determine whether the parties entered into an agreement to arbitrate.

*Discussion.* WPI seeks to dismiss or stay St. Fleur's discrimination suit and compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006) (Federal Act). St. Fleur, on the other hand, argues that she can avoid submitting her claims to arbitration because she fraudulently was induced to sign her arbitration agreement.

This dispute falls within the scope of the Federal Act because it centers on an agreement to arbitrate controversies arising from employment at WPI and because it is undisputed that WPI is involved in interstate commerce. See 9 U.S.C. §§ 1-2 (disputes involving interstate commerce fall within scope of Federal Arbitration Act); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001). State courts have jurisdiction, concurrent with Federal courts, to enforce the Federal Act. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983).

The Federal Act, 9 U.S.C. § 2, provides in part:

"A written provision in . . . a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

By enacting this statute, Congress intended to put arbitration agreements on "the same footing as other contracts." *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 511 (1974), quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924). That is, it sought "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 219-220 (1985), and to prevent State courts from "singling out arbitration provisions for suspect status." *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996). "While the language [of the statute] might plausibly be read to support a broader construction, consideration of the legislative history reveals that what the Congress intended was merely to overrule by legislation long-standing judicial precedent, which declared agreements to submit judicable controversies to arbitration contrary to public policy . . . ." *American Airlines, Inc.* v. *Louisville & Jefferson County Air Bd.*, 269 F.2d 811, 816 (6th Cir. 1959). See *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989). The Federal Act preempts State law only to the extent that it conflicts with the Federal Act. See *id.*, quoting *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941) (Federal Act preempts State law "to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *Societe Generale de Surveillance* v. *Raytheon European Mgt. & Sys. Co.*, 643 F.2d 863, 867 (1st Cir. 1981) (Federal Act preempts "only that state law inconsistent with its express provisions").

Similar to the Federal Act, the Massachusetts Act "express[es] a strong public policy favoring arbitration." *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 774 (1989), quoting *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). The Massachusetts Act, G. L. c. 251, § 1, provides in part:

"A written agreement to submit any existing controversy

to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Both the Federal and State Acts deem arbitration agreements enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* 9 U.S.C. § 2. That is, courts may apply generally applicable State-law contract defenses — such as fraud, duress, or unconscionability — to determine the validity of an arbitration agreement. *Doctor's Assocs., Inc.* v. *Casarotto, supra* at 687 (Federal Act). *Miller* v. *Cotter*, 448 Mass. 671, 677 (2007) (Massachusetts Act). See *Perry* v. *Thomas*, 482 U.S. 483, 492 n.9 (1987).

St. Fleur alleges that she fraudulently was induced to sign the arbitration agreement. Because fraudulent inducement is a generally applicable State-law contract defense,[4] a judge applies those State-law contract principles to determine whether it should invalidate the agreement. See *Doctor's Assocs., Inc.* v. *Casarotto, supra*; *Perry* v. *Thomas, supra* (Federal Act); *Miller* v. *Cotter, supra* at 677 (Massachusetts Act). The judge applies those principles whether acting under the Federal or Massachusetts Act. *Id.* The parties do not dispute that Massachusetts contract law applies in this case.

The parties do, however, dispute the procedure that a State court must follow in its application of that substantive law. More specifically, the parties argue over whether State courts must apply the procedures set forth in 9 U.S.C. § 4 of the Federal Act and, if those provisions do not apply, what procedures the court must apply in their stead.[5] We determine that a State court need not apply the procedures set forth in 9 U.S.C. § 4.

Title 9 U.S.C. § 4 states in part:

---

[4]"One party cannot enforce a contract against another whose signature he has procured by fraud or fraudulent representations, which induced the signer reasonably to believe and understand that the instrument was substantially different from what it really was." *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52, 55 (1941).

[5]Other cases have left this issue open. See *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 n.6 (1989); *Thomson McKinnon Sec., Inc.* v. *Cucchiella*, 32 Mass. App. Ct. 698, 701 n.4 (1992).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any *United States district court* . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. *The court* shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, *the court* shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, *the court* shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . *the court* shall hear and determine such issue" (emphasis added).

Title 9 U.S.C. § 4 sets forth a procedure that only Federal courts must apply. The statute provides that an aggrieved party may petition any "United States district court." Thereafter, the statute sets forth the procedure "the" court must follow. In this context, "the" court refers most naturally to the only court thus far mentioned in the statute — namely, a United States District Court. See *Pennsylvania Mut. Life Ins. Co.* v. *Henderson*, 244 F. 877, 880 (D.C. Fla. 1917) (interpreting word "the" as equivalent of "such"); *People* v. *Enlow*, 135 Colo. 249, 262-263 (1957) (" 'the' [has] a specifying or particularizing effect, opposed to the indefinite or generalizing force of 'a' or 'an' "). That is, "the" court refers to Federal courts and not to State courts. A further indication that the statute refers only to Federal courts is the directive in § 4 that a party serve process according to the *Federal* Rules of Civil Procedure. No mention is made of State rules of civil procedure. Finally, it would be a strained interpretation of the text to suppose that 9 U.S.C. § 4 refers to State courts even though the only courts mentioned are Federal courts, the only rules mentioned are Federal rules, and

there is no mention at all in 9 U.S.C. § 4 of State courts. Other courts have held that the procedures set forth in 9 U.S.C. § 4 apply to Federal courts alone. See *Aaacon Auto Transp., Inc.* v. *Newman*, 77 Misc. 2d 1069, 1072 (N.Y. Sup. Ct. 1974) (9 U.S.C. § 4 is "neither intended to apply to State courts nor [does it] by [its] terms apply to any but the United States District Courts"). See also *Atlantic Painting & Contr. Inc.* v. *Nashville Bridge Co.*, 670 S.W.2d 841, 846 (Ky. 1984) ("The federal Arbitration Act covers both substantive law *and* a procedure for federal courts to follow where a party to arbitration seeks to enforce or vacate an arbitration award in federal court [but the] procedural aspects are confined to federal cases" [emphasis in original]); *Wells* v. *Chevy Chase Bank, F.S.B.*, 363 Md. 232, 242 (2001) ("§ 4 of the [Federal Act] . . . expressly deal[s] only with the procedure to be followed by the federal courts").

Because the procedures in 9 U.S.C. § 4 do not apply to State courts, a State court may apply its own law. See *Howlett* v. *Rose*, 496 U.S. 356, 372 (1990) (States may apply "their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law"); *Miller* v. *Cotter, supra* at 678-679 (applying rules of Massachusetts Act because they did not stand as obstacle to purpose of Federal Act); *Weston Sec. Corp.* v. *Aykanian*, 46 Mass. App. Ct. 72, 75-77 (1998) (same). That is, because 9 U.S.C. § 4 does not apply in this situation, its Massachusetts counterpart, G. L. c. 251, § 2, applies unless that statute undermines the purposes of the Federal Act. See *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477-478 (1989).

We turn now, first, to consider what the provisions of G. L. c. 251, § 2, require and, second, to consider whether those provisions undermine the Federal Act's purpose of placing arbitration agreements on an equal footing with other contracts. General Laws c. 251, § 2, provides in relevant part:

> "A party aggrieved by the failure or refusal of another to proceed to arbitration under an [arbitration agreement] may apply to the superior court for an order directing the parties to proceed to arbitration. If the opposing party

denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied."

The statute thus provides that a judge shall "proceed summarily" to determine the existence of the arbitration agreement. Although G. L. c. 251 does not provide a definition of "proceed summarily," the statute is modeled after the Uniform Arbitration Act, which has been adopted by other States that have interpreted the phrase. Specifically, those courts have interpreted "proceed summarily" to mean that a judge determines whether there is a dispute as to a material fact; and, if there is *not* such a dispute, the judge resolves the issue as a matter of law; but, if there *is* such a dispute, the judge conducts an expedited evidentiary hearing on the matter and then decides the issue. *Merrill Lynch Pierce Fenner & Smith, Inc.* v. *Falowski*, 425 So. 2d 129, 130 (Fla. Dist. Ct. App. 1982); *Bass* v. *SMG, Inc.*, 328 Ill. App. 3d 492, 496 (2002); *Jack B. Anglin Co.* v. *Tipps*, 842 S.W.2d 266, 269 (Tex. 1992).

The absence of a right to a jury trial in these circumstances is consistent with a party's rights in nonarbitration contractual disputes. A motion to compel arbitration is in essence a suit in equity to compel specific performance of an arbitration agreement. See *Rosenthal* v. *Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 411 (1996). Typically, there is no right to a jury trial for actions seeking specific performance of a contract or for actions challenging the existence of a contract on the ground of fraudulent inducement. *Shikes* v. *Gabelnick*, 273 Mass. 201, 205, 207 (1930) (judge can decide in his discretion to deny or compel specific performance on account of fraud); *Shapira* v. *D'Arcy*, 180 Mass. 377, 378-379 (1902) (no right to jury trial for specific performance).[6] However, a judge, in her discretion, may grant a jury trial. *Bergeron* v. *Automobile Mut. Ins. Co.*, 261 Mass. 409, 411

[6]Article 15 of the Massachusetts Declaration of Rights provides: "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury." At the time of the adoption of the Massachusetts Constitution in 1780, there was no right to jury trial for actions seeking specific performance of a contract or for actions seeking to prevent specific performance on account of fraud. *Shapira* v. *D'Arcy*, 180

(1927). Where a party, under G. L. c. 251, § 2, seeks specific performance of an arbitration agreement or where a party is challenging the existence of an arbitration agreement on the ground of fraudulent inducement, there is no reason to believe the Legislature intended to create a right to jury trial where none existed before, especially where the statute makes no reference to trial by jury. The Massachusetts Act merely applies the same basic procedure to arbitration agreements that is applied to other contracts.

The procedure does not single out arbitration agreements for less favorable treatment. Rather, it places arbitration agreements on at least the same footing as other contracts.[7] General Laws c. 251, § 2, therefore does not undermine the purposes of the Federal Act. See *Doctor's Assocs., Inc.* v. *Casarotto,* 517 U.S. 681, 687-688 (1996); *Scherk* v. *Alberto-Culver Co.,* 417 U.S. 506, 511 (1974). Because the statute does not undermine the purposes of the Federal Act, it is not preempted by the Federal Act.[8] See *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 477 (1989). See *Rosenthal* v. *Great W. Fin. Sec. Corp, supra* at 407.

WPI argues that the judge, in denying its motion, inappropriately relied on *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1 (1st Cir. 1999), for the proposition that WPI bore the risk of St. Fleur's ignorance of the nature and contents of the arbitration agreement and for the proposition that a court will only enforce an arbitration agreement where "appropriate." St. Fleur, on the other hand, argues that the

Mass. 377, 378 (1902) (specific performance). See *Shikes* v. *Gabelnick,* 273 Mass. 201, 205, 207 (1930) (principles of equity require refusal of specific performance on account of fraud); *Shapira* v. *D'Arcy, supra* (right to trial by jury not protected for suits in equity); 3 W. Blackstone, Commentaries 437 (1768) ("the courts of equity have acquired a jurisdiction over almost all matters of fraud").

[7]In fact, by providing that the judge should "proceed summarily," the expedited procedures in G. L. c. 251, § 2, give arbitration agreements, if anything, preferential treatment over other contracts and not suspect treatment.

[8]It would be unlikely for the Massachusetts Act to undermine the purposes of the Federal Act, given the fact that the Federal and Massachusetts Acts share a common policy in favor of arbitration as an expeditious alternative to litigation. See *Dean Witter Reynolds Inc.* v. *Byrd,* 470 U.S. 213, 217 (1985); *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.,* 403 Mass. 772, 774 (1989).

judge correctly relied on the *Rosenberg* case in denying WPI's motion.

The judge did not explain clearly the grounds on which she denied WPI's motion, but she apparently did rely on the *Rosenberg* case. On the ground that the arbitration agreement at issue did not meet the standards established in the 1991 Federal Civil Rights Act, the court in *Rosenberg* affirmed the District Court's order to deny a motion to compel arbitration. *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 4. That case is inapplicable to the issues presented here. The *Rosenberg* court explicitly limited its holding to claims brought under Federal civil rights laws, while St. Fleur brought her claims under G. L. c. 151B. *Id.* at 4, 18-19, 21. Furthermore, the *Rosenberg* holding does not apply here because the court relied on the precise wording of Federal civil rights statutes, wording that G. L. c. 151B does not contain. See *id.* at 4, 18-21.[9] It was error for the judge to rely on that case in her denial of WPI's motion.

WPI contends that it was error for the judge to deny its motion because St. Fleur, by signing the last page of the arbitration agreement, acknowledged receiving and reading the arbitration agreement and therefore should have been bound by its contents. St. Fleur denies receiving the arbitration agreement and contends that it would be unfair to compel her to abide by an agreement that her supervisor induced her to sign through fraud.

Typically, one who signs a written agreement is bound by its terms whether he reads and understands them or not. See *Cohen* v. *Santoianni*, 330 Mass. 187, 193 (1953), and cases cited; *Atlas Shoe Co.* v. *Bloom*, 209 Mass. 563, 567 (1911). However, St. Fleur's allegations of fraud in the inducement place this case on a different footing. *Id.* See *Freedley* v. *French*, 154 Mass. 339, 342 (1891) (evidence of fraud in inducement; case proceeded to trial to determine if signing party bound by contract).[10]

---

[9]The 1991 Civil Rights Act provides that "[w]here appropriate . . . arbitration . . . is encouraged," and the court relied heavily on the phrase "where appropriate" in its determination. *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 4, 18-21 (1st Cir. 1999). Similar language is not found in G. L. c. 151B, the statute under which St. Fleur brings her claims.

[10]The cases cited by WPI do not state otherwise. See *Gonzalez* v. *GE*

St. Fleur has produced evidence that she signed the arbitration agreement's signature page on account of fraud. Specifically, she has produced evidence that her supervisor at WPI knowingly misrepresented the nature and contents of the agreement and that she reasonably relied on that misrepresentation. This evidence, if believed, is sufficient to sustain a claim of fraud in the inducement. This case presents a dispute as to a material fact with respect to the existence of the arbitration agreement. The judge was required to hold an expedited hearing in accordance with G. L. c. 251, § 2, to determine the existence of the arbitration agreement. The judge conducted no such hearing. We therefore must vacate her order and remand this case so that she may conduct a hearing consistent with this opinion.

Finally, WPI argues that St. Fleur's claim of fraud in the inducement is one for an arbitrator and not for a court to determine. "A claim of fraud in the inducement of the arbitration provision in a contract must be resolved by a court, but a claim of fraud in the inducement of the contract itself must be arbitrated." *Quirk* v. *Data Terminal Sys., Inc.*, 379 Mass. 762, 766 (1980), citing *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967). That is, if there is a claim of fraudulent inducement of the arbitration clause itself — "an issue which goes to the 'making' of the agreement to arbitrate" — the judge may proceed to adjudicate it. *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, *supra*. In the present case, St. Fleur claims that she was fraudulently induced to enter into the arbitration agreement. Because this is an issue that goes solely to the making of the agreement to arbitrate, a judge and not an arbitrator will resolve the issue.

*Conclusion.* We vacate the judge's order and remand this case so that the judge may conduct an expedited hearing consistent with this opinion to determine the existence of an arbitration agreement.

*So ordered.*

*Group Adm'rs, Inc.*, 321 F. Supp. 2d 165, 168-169 (D. Mass. 2004) (plaintiff made no claim of fraud); *Friedman* v. *Fife*, 262 A.D.2d 167, 167-168 (N.Y. 1997) (claims of fraud waived, negated, or "conclusively rebutted").