The plaintiffs appeal from the Superior Court judgment dismissing their complaint against Tough Mudder Incorporated (Tough Mudder),[3] alleging that the judge erred in allowing Tough Mudder's motion to dismiss and to compel arbitration. The plaintiffs claim that the arbitration provision contained in the parties' agreement is unenforceable and that the agreement itself is an unenforceable contract. We affirm.
Background. The record reflects the following facts. Tough Mudder is a company that organizes athletic endurance events consisting of mud-filled obstacle courses designed to test participants' physical and mental strength. In 2014, Tough Mudder advertised a "Mudderella Boston" event scheduled to take place in Haverhill on September 6. The plaintiffs are all Massachusetts residents who used Tough Mudder's online Web site to sign up for the event and to pay the registration fee. When registering for the event, Tough Mudder presented each plaintiff with a "participant assumption of risk, waiver of liability, and indemnification agreement" (agreement) on the Web site in a scroll box displaying a portion of its text; scrolling through the box allowed registrants to read the full text of the agreement. A check box beneath the scroll box declared "I agree to the above waiver." In order to register for the event, the plaintiffs needed to check this box.
Prior to the date of the event, officials in Haverhill declined Tough Mudder's request for a permit. Tough Mudder immediately moved the event to nearby Amesbury. However, just a few days before the event, Tough Mudder learned that Amesbury could no longer serve as host. Tough Mudder then secured a third, out-of-State location for the event in Westbrook, Maine, approximately eighty miles from the original Haverhill location. Due to this increased distance, the plaintiffs were unable to attend the event.[4]
Subsequently, the plaintiffs filed a complaint in the Superior Court, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. They also claimed that Tough Mudder's policy of refusing refunds for any reason violated the Massachusetts Consumer Protection Act, G. L. c. 93A. The plaintiffs also presented class action allegations. After removing the case to Federal court, where it was later remanded back to the Superior Court, Tough Mudder moved to dismiss or to stay and to compel arbitration. Following a hearing, the judge allowed the motion. In dismissing the plaintiffs' complaint, the judge adopted Tough Mudder's arguments and ruled that the plaintiffs' allegations "are plainly subject to the [a]rbitration agreement provisions of the parties' contracts and must be mediated first, and then, if unsuccessful, arbitrated."
Discussion. In assessing Tough Mudder's motion to compel arbitration, which is properly treated as one for summary judgment, we must determine whether the parties agreed to submit the dispute to arbitration. Miller v. Cotter, 448 Mass. 671, 676 (2007). See G. L. c. 251, § 2(a ). As such, we review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).
1. Statutory framework. The Uniform Arbitration Act, set forth in G. L. c. 251, §§ 1 et seq. (the act), "express[es] a strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989), quoting from Danvers v. Wexler Constr. Co., 12 Mass. App. Ct. 160, 163 (1981). The act provides in part:
"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."
G. L. c. 251, § 1, inserted by St. 1960, c. 374, § 1.[5] The act also allows for proceedings in the Superior Court to compel arbitration in accordance with the terms of an arbitration agreement, and permits an interlocutory appeal from an order denying an application to compel arbitration. See G. L. c. 251, §§ 2, 18.
Under both State and Federal law, it is clear that parties to an agreement can agree to arbitrate claims and disputes that might arise between them. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26-27 (1991) ; Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390, 395-396 (2009). As noted supra, § 2 of the act provides that a party aggrieved by another's refusal to arbitrate a dispute where a written agreement between the parties requires arbitration may apply to the Superior Court for an order directing that such a procedure take place. G. L. c. 251, § 2. The act also provides an opposing party who questions the existence of a valid agreement to arbitrate to have the issue addressed by a judge, with the proviso that such a determination as to the agreement's validity be decided summarily. G. L. c. 251, § 2(a ). See St. Fleur v. WPI Cable Sys./Mutron, 450 Mass. 345, 353 (2008).
2. Scope of our review. Courts have a very limited role in matters involving arbitration. When a motion to compel arbitration is met with the argument that the entire agreement is unenforceable, our only task is to determine whether the arbitration provision itself is enforceable. See Quirk v. Data Terminal Sys., Inc., 379 Mass. 762, 766 (1980) ("We think it is clear that the Legislature intended, by the language of § 1 [of the act], that the arbitration provision be unenforceable only when the arbitration provision itself [and not the contract as a whole] is revoked 'upon such grounds as exist ... for the revocation of any contract' "). If we determine that the arbitration provision is enforceable, then questions surrounding the formation of the agreement itself, such as whether the consideration offered was illusory, or questions about other specific provisions, are left to the arbitrator. Id. at 766-768. See Barnstead v. Ridder, 39 Mass. App. Ct. 934, 936 (1996) (once judge determines matter should be arbitrated, questions regarding interpretation of agreement left for arbitrator).
Thus, to determine whether the arbitration provision is enforceable, we must examine its language independent of the rest of the agreement. Notwithstanding the strong public policy favoring arbitration that underlies the act, see Home Gas Corp. of Mass., Inc., 403 Mass. at 774, it remains available to the party opposing arbitration to assert traditional grounds that would permit the voiding of a contract, such as fraud, duress, and unconscionability, in arguing that the motion to compel arbitration should be denied. See St. Fleur, supra at 350, citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Here, the plaintiffs allege that the arbitration provision is unconscionable.[5]
a. Unconscionability. The plaintiffs allege that the arbitration provision is unconscionable for a number of reasons. They claim that the arbitration clause is not conspicuous, as it is "not highlighted and is obscurely embedded deep in the [a]greement" such that it creates "unfair surprise" to registrants. The plaintiffs also argue that certain terms within the provision are vague or undefined, which they again claim constitute "unfair surprise."
Historically, courts considered a contract unconscionable if it was "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Hume v. United States, 132 U.S. 406, 411 (1889), quoting from Earl of Chesterfield v. Janssen, 28 Eng. Rep. 82, 100 (Ch. 1750). Later, "a contract was determined unenforceable because unconscionable when 'the sum total of its provisions drives too hard a bargain for a court of conscience to assist.' " Waters v. Min Ltd., 412 Mass. 64, 66 (1992), quoting from Covich v. Chambers, 8 Mass. App. Ct. 740, 750 n.13 (1979). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Miller, 448 Mass. at 679, citing Restatement (Second) of Contracts § 208 comment a (1981). "Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis ..., giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-293 (1980). Considering the setting, purpose, and effect of the arbitration provision here, we conclude that it was not unconscionable.
Nothing in the setting of its execution suggests that the arbitration provision was procedurally unconscionable. The entire agreement is preceded by a conspicuous, clearly-worded, all-caps header stating: "PARTICIPANTS: READ THIS DOCUMENT CAREFULLY BEFORE SIGNING. THIS DOCUMENT HAS LEGAL CONSEQUENCES AND WILL AFFECT YOUR LEGAL RIGHTS AND WILL ELIMINATE YOUR ABILITY TO BRING FUTURE LEGAL ACTIONS." The arbitration provision is titled "Mediation and Arbitration," appears on the fourth page of the seven-page agreement, and is written in what appears to be the same size and font as the rest of the agreement. The provision itself is only one paragraph long and uses fairly clear language. There is nothing in the record suggesting that the plaintiffs were under pressure to read the agreement quickly or to not read it at all. The agreement also required an affirmative response from the plaintiffs by clicking the "I accept" button. See Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 576 (2013). These factors all weigh against a finding of unfair surprise or oppressive formation. See Swift v. Zynga Game Network, Inc., 805 F. Supp. 2d 904, 911-912 (N.D. Cal. 2011) (granting motion to compel arbitration where plaintiff had opportunity to review terms of service via hyperlink and clicked "I accept" button).
Similarly, nothing in the terms of the arbitration provision-its purpose and effect-suggests that it was substantively unconscionable. The purpose of submitting disputes to binding arbitration is heavily favored by statute and by case law. See G. L. c. 251, § 1 ; Home Gas Corp. of Mass., Inc., 403 Mass. at 774. The agreement was bilateral in that either party could invoke its provisions. All rights and remedies available in the courts were preserved for the arbitrator. On this record, there is no viable claim of unconscionability in the arbitration provision.[7]
b. Scope of provision. Finally, the plaintiffs argue that even if the arbitration provision is enforceable, their claims against Tough Mudder do not require arbitration because they do not fall within the scope of that provision. Specifically, they argue that the language in the agreement requiring that "all disputes, controversies, or claims arising out of my participation in the Mudderella event shall be submitted to binding arbitration" does not apply to them, because the plaintiffs never participated in the event.
Under the terms of the arbitration provision, the plaintiffs agreed that "[i]n the event of a legal issue, [they] agree to engage in good faith efforts to mediate any dispute that might arise" and that should mediation fail, "all disputes, controversies, or claims arising out of [their] participation" in the event should be submitted to arbitration. This language is somewhat unclear, because it first requires the parties to mediate "any dispute that might arise," but if mediation fails, to submit to arbitration all "disputes, controversies, or claims arising out of [their] participation" in the event. However, the Commonwealth's policy in favor of arbitration generally instructs us that where, as here, a contract has an arbitration provision that is broad in its reach, there is a rebuttable presumption that a contract dispute is covered by the provision, and doubts whether a particular dispute comes within the scope of the provision should be resolved in favor of arbitration. See Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 666 (2002). See also Commonwealth v. Philip Morris Inc., 448 Mass. 836, 843-844 (2007). "In a number of contexts, we have construed the phrase 'arising out of' and similar phrases (e.g., 'connected to' or 'relating to') in an arbitration clause as constituting 'broad' language that invokes the FAA's [and the act's] presumption in favor of arbitration." Warfield, 454 Mass. at 396-397.[8] As such, we are persuaded that the claims raised in the plaintiffs' complaint fall within the scope of the arbitration provision. See Massachusetts Coalition of Police, Local 165, AFL-CIO v. Northborough, 416 Mass. 252, 256 (1993) ( [A]bsent "positive assurance" that arbitration provision does not cover instant dispute, motion to compel arbitration should not be denied [citation omitted] ).
Conclusion. Because we conclude that the agreement contains an enforceable provision requiring the parties to submit legal disputes to arbitration, and that this case falls within the scope of that provision, the judge properly dismissed the plaintiffs' complaint. As to the plaintiffs' remaining claims, they are for the arbitrator to decide.[9]
Judgment affirmed.

The first amended complaint also named Tough Mudder, LLC, and BK Bridge Events, LLC, as defendants. These two entities have since merged into Tough Mudder and are no longer in existence.

According to the affidavit of Tough Mudder's vice-president of event production, approximately 11,300 individuals registered for the Mudderella Boston event, paying a total of $1,065,040.35 in nonrefundable registration fees. Of those 11,300 individuals, 6,960, representing $617,574.86 in registration fees retained by Tough Mudder, did not attend the event in Maine.

Congress adopted a similar statute, the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. Its language is remarkably similar to that of the Massachusetts act: "[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

We also reject the plaintiffs' claim that the arbitration provision lacks mutual consideration. This is clearly not so. Each party waived its right to judicial process and gained the right to invoke arbitration. This reciprocal exchange of benefit and detriment constitutes consideration. Marine Contractors Co. v. Hurley, 365 Mass. 280, 286 (1974), citing Williston, Contracts § 102 (3d ed. 1957) ("The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee").

See, e.g., Drywall Sys., Inc., supra at 666-667 (construction subcontracts between general contractor and subcontractor providing for arbitration of claims "arising out of or relative to" subcontracts required arbitration of all parties' construction project claims, including claim under G. L. c. 93A); Philip Morris Inc., supra at 844 (settlement agreement between Commonwealth and tobacco companies providing for arbitration of disputes "arising out of" or "relating to" calculation of companies' annual payments required arbitration of claim).

In light of our decision, we deny the plaintiffs' request pursuant to c. 93A for appellate attorney's fees.