MILKEY, J.
*529 The plaintiffs are former employees of the Roxbury Comprehensive Community Health Center, Inc. (RCCHC), a now-defunct, nonprofit health care provider. Alleging that they were not paid wages owed to them, the plaintiffs brought the current action against RCCHC pursuant to the Wage Act, G. L. c. 149, § 148. They also asserted that defendant Keith D. Crawford, M.D., the chairman of RCCHC's board of directors, personally was liable for the alleged Wage Act violations.[3] Crawford moved for summary judgment, arguing that -- as a volunteer director of a nonprofit institution -- he enjoyed immunity from Wage Act claims. He asserted such immunity based on two separate statutes: the Volunteer Protection Act (VPA), 42 U.S.C. § 14503 (2012), and G. L. c. 231, § 85W. A Superior Court judge concluded that these statutes applied to Wage Act claims. However, the judge ultimately denied Crawford's motion *1024 for summary judgment on the ground that there was a dispute of fact over whether Crawford's conduct here fell within statutory exceptions to such immunity.[4] After Crawford unsuccessfully pursued a motion for reconsideration, he appealed. We are now called upon to decide whether this appeal is properly before us. For the reasons that follow, we conclude that it is not, and we decline to exercise our discretion to reach the underlying merits. Accordingly, we dismiss the appeal.
Background. We summarize the relevant facts set forth in the summary judgment record in the light most favorable to the plaintiffs, *530 the nonmoving party. Augat v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).
The alleged Wage Act violations. By early 2013, RCCHC began to experience serious financial difficulties. At that time, Crawford served not only as chairman of RCCHC's board, but also held himself out as its "[p]resident" and "acting CEO." Crawford learned by February 25, 2013, that RCCHC did not intend to pay its employees for future work unless and until a Federal grant came through. He also learned that RCCHC likely would be unable to meet its payroll obligations on March 15, 2013. Nevertheless, he personally encouraged the employees to keep working and assured them that they would get paid. RCCHC did in fact miss its payroll on March 15, 2013, and it had not paid its employees by March 22, 2015 (the date by which Crawford alleges any Wage Act violation accrued). As documented by electronic mail messages (e-mails) sent a few days after that, once apprised of limited funds remaining in RCCHC's payroll account, Crawford suggested using that money toward paying off RCCHC's vendors instead of its employees.
The interlocutory rulings for which review is sought. The plaintiffs allege that with Crawford effectively having served as "president" of RCCHC, he personally is liable for the Wage Act violations. See G. L. c. 149, § 148 (defining "employer" for purpose of Wage Act as including president of corporation). Crawford's principal defense was that because he was not paid for any roles he was serving at RCCHC, a nonprofit entity, he is immune from a Wage Act violation by operation of the VPA and its State counterpart, G. L. c. 231, § 85W.[5]
As noted, the judge denied Crawford's motion for summary judgment on the ground that the plaintiffs had raised a triable issue as to whether Crawford's conduct met the exceptions set forth in the two immunity statutes. With respect to the VPA, the judge concluded that "there is at least some evidence in the record from which a jury could conclude that Crawford engaged in 'willful' misconduct," which falls outside the immunity provided by the statute. With respect to G. L. c. 231, § 85W, the judge ruled *531 that there was some evidence upon which a jury could conclude that Crawford's acts were "intentionally designed to harm" the plaintiffs, which would place them outside the scope of the immunity that statute provided.
In his motion for reconsideration, Crawford argued that the only real evidence *1025 that he might have engaged in disqualifying conduct was the e-mails that could be taken to indicate his preference to pay RCCHC's vendors over its employees. According to him, these e-mails could not be considered because of their timing, the e-mails having been sent only after any Wage Act violations already had occurred. The judge denied the motion for reconsideration, and Crawford appealed.[6]
Discussion. Whether an interlocutory appeal is proper. The initial question we face is whether the current interlocutory appeal is properly before us.[7] The denial of a motion for summary judgment is a classic interlocutory ruling that typically cannot be appealed. See Elles v. Zoning Bd. of Appeals of Quincy, 450 Mass. 671, 673-674, 881 N.E.2d 129 (2008). There are, however, recognized exceptions to this rule, including those that are denominated collectively as the doctrine of present execution (a venerable, if confusing, label). Id. at 674, 881 N.E.2d 129. In short, under that doctrine, immediate appeals are allowed "where the interlocutory ruling 'will interfere *532 with rights in a way that cannot be remedied on appeal' from the final judgment, and where the matter is 'collateral' to the merits of the controversy." Id., quoting Maddocks v. Ricker, 403 Mass. 592, 597-600, 531 N.E.2d 583 (1988).
As relevant here, the question whether the doctrine of present execution applies comes down to whether the statutes at issue here confer immunity from suit, or merely immunity from liability. If the statutes confer immunity only from liability, a defendant who is compelled to defend himself at trial remains in a position fully to vindicate his rights in an appeal taken after final judgment has entered. Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield, 401 Mass. 26, 31, 513 N.E.2d 1277 (1987), cert. denied sub nom. Forastiere v. Breault, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988). However, if the defendant is entitled to immunity from suit, then having to continue to defend himself in the litigation works a separate wrong that a deferred appeal cannot undo. Id. ("If ... the asserted right is one of freedom from suit, the defendant's right will be lost forever unless that right is determined [on interlocutory appeal]"). In that situation, the doctrine of *1026 present execution is said to apply, and an interlocutory appeal can be taken.[8] See id.
Although the theory behind the case law is straightforward, difficulties abound in applying such principles in practice. A pair of relatively recent cases from the Supreme Judicial Court well illustrates this. In Maxwell v. AIG Domestic Claims, Inc., 460 Mass. 91, 93-94, 950 N.E.2d 40 (2011), a workers' compensation insurer concluded that an employee of an insured may have filed a fraudulent claim, and it therefore referred that individual to the private investigatory body known as the Insurance Fraud Bureau (IFB). Based on that referral and related actions, the employee brought an action against the insurer alleging malicious prosecution and similar claims. Id. at 100, 950 N.E.2d 40. In defense, the insurer claimed qualified immunity pursuant to St. 1996, c. 427, § 13 (i ), the statute that created the IFB and the reporting system that insurers are *533 mandated to follow.[9] Id. at 98, 950 N.E.2d 40. After its motion for summary judgment claiming such immunity was denied, the insurer filed an appeal. Id. at 97-98, 950 N.E.2d 40. Even though the relevant statutory language speaks only in terms of insurers being protected from "liability," see note 9, supra, the court inferred a "legislative intent" to protect insurers from suit. Id. at 102, 950 N.E.2d 40. The court reasoned that "[r]eporting to the IFB might be chilled if protection could be secured only after litigating a claim through to conclusion, so we conclude that [the statute] should be interpreted as providing [insurers] immunity from suit rather than mere immunity from liability." Id. at 98, 950 N.E.2d 40. In other words, the court examined whether the overall purpose of the statute might be frustrated if an interlocutory appeal could not be taken. See ibr.US_Case_Law.Schema.Case_Body:v1">id. Based on that approach, the court concluded that the doctrine of present execution applied and proceeded to reach the merits.[10]
A year after Maxwell was decided, the Supreme Judicial Court issued its decision in Marcus v. Newton, 462 Mass. 148, 967 N.E.2d 140 (2012). The plaintiff there was injured during a softball game on a public ballfield. Id. at 149, 967 N.E.2d 140. The defendant city asserted that it was immune based on the recreational use statute, G. L. c. 21, § 17C.[11] Id. at 150, 967 N.E.2d 140.
*1027 That statute provides immunity to entities that make their land available for recreational or related uses without remuneration.[12] Like the statute in Maxwell, see 460 Mass. at 98, 950 N.E.2d 40, the recreational use statute in Marcus provides only qualified immunity;
*534 land owners are immunized from liability for injuries arising out of their ordinary negligence, but not for "wilfull, wanton or reckless conduct." Marcus, supra at 153, 967 N.E.2d 140. See St. 1996, c. 427, § 13(i ) ("In the absence of malice or bad faith"); G. L. c. 21, § 17C. Also like the statute in Maxwell, the recreational use statute speaks only in terms of immunity from liability. See note 12, supra. Focusing on the statute's plain language, the court concluded that it did not provide immunity from suit and that the doctrine of present execution therefore did not apply.[13] Marcus, supra. The court did not engage in the type of analysis on which Maxwell rests; that is, it did not examine whether the purpose of the recreational use statute -- to encourage people to make their land available for public use -- "might be chilled if protection could be secured only after litigating a claim through to conclusion." Maxwell, supra. In fact, Marcus does not mention Maxwell at all.
Employing, as they do, different modes of analysis, Maxwell and Marcus are somewhat difficult to harmonize. On the surface, the specific reasoning on which each case rests would seem to apply to the other, and yet the cases reached opposite results on whether an interlocutory appeal was proper. However, there is one potential distinction between the two cases, and absent the Supreme Judicial Court's explicit guidance on how to harmonize them, we infer that the court must have deemed this distinction significant. In Maxwell, 460 Mass. at 98, 950 N.E.2d 40, the court placed sustained emphasis on the fact that the same statute that provided immunity to insurers also placed strict reporting requirements on them.[14] Indeed, it is the insurers' fulfilling such reporting duties that is the very subject of the immunity that the statute concurrently offers. See ibr.US_Case_Law.Schema.Case_Body:v1">id. The court's emphasis on the insurers' mandatory reporting duties strongly suggests that the court viewed the Legislature's creation of those obligations as going hand-in-hand with insurers being provided full immunity from suit for complying with them (perhaps even as an implied quid pro quo). See id.
*535 By contrast, the recreational use statute at issue in Marcus places no affirmative obligations on the owners of recreational land. See G. L. c. 21, § 17C. Rather, it simply offers incentives for such owners to open their land to the public for such use. See id. Reading Maxwell and Marcus together, we conclude that where a statute designed to encourage private *1028 conduct speaks in terms of providing immunity only from liability, and that statute places no affirmative obligations on the protected party to take the actions being immunized, courts are not, without more, to infer an intent to provide immunity from suit.[15]
With this understanding in place, we turn to the specific statutes before us. We begin with the State statute, because the analysis that applies to it is more straightforward.
The language of G. L. c. 231, § 85W, speaks in terms of immunity only from liability, not from suit.[16] Moreover, like the recreational use statute, § 85W imposes no obligations on people who serve as volunteer board members of nonprofit institutions, but rather merely encourages such volunteerism by removing a potential impediment (fear of liability). See G. L. c. 231, § 85W. We have no basis for distinguishing this case from Marcus, 462 Mass. at 153, 967 N.E.2d 140, and therefore hold that the doctrine of present execution does not apply with respect to Crawford's claimed immunity under State law.
*536 We turn then to whether the plaintiffs nonetheless have the right to pursue their interlocutory appeal by force of the VPA. Generally speaking, the operative provisions of the VPA and G. L. c. 231, § 85W, are similar in both wording and function.[17] However, the analytical framework that applies to our consideration of the VPA is somewhat different from the one that applies to its State counterpart. That is because the question whether the VPA bestows on Crawford an interlocutory appeal as of right implicates issues of federalism.[18] Since the VPA includes an express preemption clause, it is plain that Congress *1029 intended it to preempt State law to some extent. See 42 U.S.C. § 14502(a) (2012).[19] But the existence of that provision does not resolve the particular preemption issue before us in the current appeal. For the reasons set forth above, as a matter of Massachusetts appellate law, Crawford cannot appeal the denial of his motion for summary judgment but instead may raise his immunity claims on appeal only after final judgment has entered. With respect to the VPA, the question then is whether, by enacting that statute, Congress intended to preempt State law by conferring on people in Crawford's position a statutory entitlement to immediate appellate review in State court.
In addition to applying a general presumption against Federal preemption, appellate courts are particularly loathe to infer preemption of neutral procedural rules established by State courts. See Ajemian v. Yahoo!, Inc., 478 Mass. 169, 178, 84 N.E.3d 766 (2017), cert. denied *537 sub nom. Oath Holdings, Inc. v. Ajemian, --- U.S. ----, 138 S.Ct. 1327, 200 L.Ed.2d 526 (2018) ("we presume that Congress did not intend to intrude upon traditional areas of State regulation or State common law unless it demonstrates a clear intent to do so"). As the United States Supreme Court has stated, "[w]hen a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost caution before deciding that it is obligated to entertain the claim." Howlett v. Rose, 496 U.S. 356, 372, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Cf. St. Fleur v. WPI Cable Sys./Mutron, 450 Mass. 345, 352, 879 N.E.2d 27 (2008) (procedural rules set forth in Federal Arbitration Act do not apply in State courts).
We find particularly instructive a line of United States Supreme Court cases involving interlocutory review of qualified immunity defenses raised with regard to civil rights claims brought pursuant to 42 U.S.C. § 1983 (2012). The Court long ago recognized that qualified immunity provides defendants protection "from the burdens of trial as well as a defense to liability." Johnson v. Fankell, 520 U.S. 911, 915, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In addition, the Court held that a defendant who has raised qualified immunity as a defense to a § 1983 action brought in Federal court has the right to bring an interlocutory appeal of the denial of a motion to dismiss. See Mitchell v. Forsyth, 472 U.S. 511, 524-530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In Johnson, supra at 918-921, 117 S.Ct. 1800, the Court faced the question whether such an official had a Federal right to seek an interlocutory appeal when the § 1983 claim was brought in State court. The Court held that no such right existed, and that therefore no interlocutory appeal would lie in States whose rules did not permit one. Id. at 920-921, 117 S.Ct. 1800.
With such cases in mind, we see nothing in the VPA that entitles Crawford to interlocutory review as of right. Although the VPA includes an express preemption provision, the language of that provision in no way addresses questions of State appellate procedure. See note 19, s="http://nrs.harvard.edu/urn-3:HLS.Libr.US_Case_Law.Schema.Case_Body:v1" id="p1030" href="#p1030" data-label="1030" data-citation-index="1" class="page-label">*1030supra. Moreover, like its State counterpart, the plain language of the operative provision of the VPA speaks in terms of immunity only from liability. See 42 U.S.C. § 14503(a). To be sure, a separate section of the VPA setting forth legislative findings does include some Congressional expressions of concern over volunteer board members facing undue litigation costs, not just liability.[20] However, we do not view such statements, *538 standing alone, as commanding State interlocutory appellate review when such an appeal otherwise would not be available.[21]
Whether to reach the merits. Although we have concluded that Crawford's appeal is not properly before us, we still could reach the underlying merits as a matter of our discretion. See, e.g., Commonwealth v. Delnegro, 91 Mass. App. Ct. 337, 343, 75 N.E.3d 73 (2017). Reaching the merits in an improper appeal typically is done only where the relevant claim "has been briefed fully by the parties, it raises a significant issue [of law], and addressing it would be in the public interest." Marcus, 462 Mass. at 153, 967 N.E.2d 140 (even in absence of proper interlocutory appeal, court chose to address whether defendant city could claim immunity under recreational use statute). The legal issues that Crawford urges us to address go to whether the judge erred in determining that the particular summary judgment record here raised triable questions of fact with regard to the application of exceptions to the immunity statutes. Such record-bound issues are of limited import to other parties, and we decline to reach them.
Our job is not yet done, because we also face whether to reach certain legal issues that the plaintiffs themselves raised in litigating this appeal. Specifically, the plaintiffs question, as they did in Superior Court, whether the immunity provided by the VPA and G. L. c. 231, § 85W, even applies to Wage Act claims. According to the plaintiffs, both immunity statutes were intended to cover only common-law tort claims, not statutory claims of the sort at issue here. These threshold issues are pure questions of law that have potentially broad application.
Nevertheless, we decline to reach these issues in the current appeal for four reasons. First, no party actually has requested that *539 we reach them as a matter of our discretion.[22] Second, because the plaintiffs pursued no cross appeal, there is at least some doubt whether we properly could resolve these issues in their favor in the current interlocutory appeal.[23] Third, *1031 the single justice already declined to allow a discretionary appeal here (see note 6, supra ), and, nothing having changed since that ruling, we are disinclined to revisit it. Fourth, although both sides have touched on whether Wage Act claims fall within the scope of the two immunity statutes, neither side has briefed such issues with the care and completeness that they deserve. See Phillips v. Youth Dev. Program, Inc., 390 Mass. 652, 660, 459 N.E.2d 453 (1983) (declining to reach issue "raised as an afterthought and not fully briefed on both sides"). We note, for example, that consideration of whether Congress intended the VPA to preempt States from subjecting volunteer board members to Wage Act claims necessitates a level of analysis absent from the parties' current briefs. It would be imprudent for us to decide such issues based on the current state of those briefs.
Appeal dismissed.

Initially, the plaintiffs also joined a second board member as a defendant. A separate and final judgment entered in favor of that defendant pursuant to Mass. R. Civ. P. 54(b), 365 Mass. 820 (1974), and no appeal was taken. Therefore, no issues regarding the second individual are before us.

The plaintiffs filed a cross motion for summary judgment, which the judge also denied. The propriety of that ruling is not before us.

Crawford also argued that he was entitled to statutory immunity under G. L. c. 231, § 85K, which provides immunity for "director[s], officer[s] or trustee[s] of [tax-exempt] educational institution[s]." The judge concluded that Crawford was not entitled to immunity under § 85K because RCCHC did not qualify as an "educational institution" under the statute, and Crawford has abandoned any reliance on § 85K on appeal.

Meanwhile, pursuant to G. L. c. 231, § 118, first par., Crawford requested that the single justice allow him to bring an interlocutory appeal challenging the denial of his motion for summary judgment. The single justice denied that petition, thereby declining to refer the matter to a three-judge panel. However, in his order, the single justice indicated that if Crawford believed he enjoyed an appeal as of right pursuant to the doctrine of present execution, the proper procedure was to file a notice of appeal in Superior Court.

If the doctrine of present execution applies, then there is no separate timing problem with Crawford's appeal, even though he did not file his notice of appeal until well after thirty days from the date the order denying his motion for summary judgment was docketed. That is because within ten days of that order, he served on the plaintiffs a motion for reconsideration, and then brought his appeal within thirty days of the denial of that motion. Were the denial of his motion for summary judgment determined to be appealable pursuant to the doctrine of present execution, then that order is considered as a final judgment for purposes of the appellate rules, and the timely motion for reconsideration is deemed to be have tolled the running of the appeal period. See Slade v. Ormsby, 69 Mass. App. Ct. 542, 544-545, 872 N.E.2d 223 (2007) (because disqualification order is subject to doctrine of present execution, it is treated as final judgment, and timely motion to reconsider such ruling is treated as motion for amendment of judgment pursuant to Mass. R. Civ. P. 59 [e], 365 Mass. 827 [1974] ). Hence, the key question here is whether the doctrine of present execution applies; no separate timing impediments are present.

The cases generally speak of the need for the appellate issue to be " 'collateral' to the merits of the [underlying] controversy" as an independent prerequisite for the doctrine of present execution to apply. See, e.g., Elles, 450 Mass. at 674, 881 N.E.2d 129. However, they do not appear to demand separate analysis of this question when the defense at issue is one of immunity. See Estate of Moulton v. Puopolo, 467 Mass. 478, 485, 5 N.E.3d 908 (2014), quoting Kent v. Commonwealth, 437 Mass. 312, 317, 771 N.E.2d 770 (2002) ("[T]he denial of a motion to dismiss on immunity grounds is always collateral to the rights asserted in the underlying action because it 'is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated' ").

Under that statute, "[i]n the absence of malice or bad faith, no insurer ... shall be subject to civil liability for damages by reason of any statement, report or investigation made pursuant to the provisions of this section." St. 1996, c. 427, § 13(i ).

The court ultimately upheld the denial of the motion for summary judgment, concluding that the plaintiff's claims were based "at least in part, on conduct by [the insurer] that is not subject to statutory immunity." Maxwell, 460 Mass. at 106, 950 N.E.2d 40.

Although the defendant in Marcus was a municipality, it was asserting immunity under a generally applicable statute. Therefore, special considerations applicable to governmental officials acting in their official capacity were not implicated. Compare Littles v. Commissioner of Correction, 444 Mass. 871, 875-876, 832 N.E.2d 651 (2005) (doctrine of qualified immunity protecting government officials from liability for exercise of discretion includes immunity from suit).

The operative provision of G. L. c. 21, § 17C, provides that:
"[a]ny person having an interest in land ... who lawfully permits the public to use such land for recreational, conservation, scientific, educational, environmental, ecological, research, religious, or charitable purposes without imposing a charge or fee therefor ... shall not be liable for personal injuries or property damage sustained by such members of the public ... while on said land in the absence of wilful, wanton, or reckless conduct by such person."

Nevertheless, the court went on to exercise its discretion to reach the merits. Marcus, 462 Mass. at 153, 967 N.E.2d 140.

Thus, for example, the court highlighted that "the statute mandates that insurers promptly report transactions to the IFB where they merely 'hav[e] reason to believe' that fraud may have occurred." Maxwell, 460 Mass. at 98, 950 N.E.2d 40.

We do not view Estate of Moulton, 467 Mass. at 479-481, 5 N.E.3d 908, as a counter example. In that case, the estate of an employee at a health care provider sought to bring a wrongful death action against the entity's directors, and the issue was whether such an action was barred by the workers' compensation act, the relevant provision of which was incorporated into the wrongful death statute by reference. Id. The workers' compensation act provides that "[c]ompensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct ... or the foreseeability of harm." Id. at 482-483, 5 N.E.3d 908. Characterizing the exclusive remedy provision as providing employers a species of immunity from suit, the court held that the doctrine of present execution applied. Id. at 485-486, 5 N.E.3d 908.

In pertinent part, G. L. c. 231, § 85W, provides that:
"no person who serves without compensation ... as an officer, director or trustee of any nonprofit charitable organization ... shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as an officer, director or trustee; provided, however, that the immunity conferred by this section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions which result in harm to the person."

In pertinent part, the VPA generally provides that:
"no volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if ... the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission ... [and] the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer."
42 U.S.C. § 14503(a).

In addition, because the VPA is a Federal statute, we must apply interpretive rules established by the United States Supreme Court.

In pertinent part, the preemption clause of the VPA provides that
"[the VPA] preempts the laws of any State to the extent that such laws are inconsistent with this chapter, except that this chapter shall not preempt any State law that provides additional protection from liability relating to volunteers or to any category of volunteers in the performance of services for a nonprofit organization or governmental entity."
42 U.S.C. § 14502(a).

See 42 U.S.C. § 14501(a) (2012) ("Congress finds and declares that ... the willingness of volunteers to offer their services is deterred by the potential for liability actions against them ... [and that] due to high liability costs and unwarranted litigation costs, volunteers and nonprofit organizations face higher costs in purchasing insurance, through interstate insurance markets, to cover their activities").

It bears noting that Congress's providing immunity from liability itself helps reduce litigation costs through resolving cases sooner or discouraging them altogether. Therefore, the fact that Congress expressed concern over volunteer directors potentially facing litigation costs does not mean that Congress necessarily intended to provide them with immediate rights of appeal. Moreover, allowing interlocutory appeals, of course, lowers litigation costs for an appellant only where he actually prevails in such an appeal.

The plaintiffs' brief requests that we dismiss this appeal, and it questions whether the immunity statutes apply only as a fallback argument should we reach the merits.

We could not grant the relief that Crawford seeks through this interlocutory appeal -- judgment in his favor as a matter of law -- without considering whether the judge was correct in ruling that the immunity statutes applied to Wage Act claims. In addition, as a general matter, we can affirm a final judgment on any ground supported by the record. See Roman v. Trustees of Tufts College, 461 Mass. 707, 711, 964 N.E.2d 331 (2012) ("we may affirm the [grant of summary] judgment on any ground supported by the record"). However, the extent to which that principle applies to an interlocutory appeal of the denial of summary judgment is more complicated. Were we to rule that the immunity statutes did not apply to the Wage Act, this would provide the plaintiffs more encompassing relief than they obtained in Superior Court (the denial of Crawford's motion for summary judgment based on there being facts in dispute), a result that typically cannot occur in the absence of a cross appeal. Cf. Taylor v. Beaudry, 82 Mass. App. Ct. 105, 112, 971 N.E.2d 313 (2012) ("It is blackletter law that in the absence of a cross appeal an appellee may not obtain a decree more favorable than the one issued below").